791 So.2d 36 (2001)
James LYONS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-3061.
District Court of Appeal of Florida, Second District.
May 11, 2001.
Rehearing Denied July 18, 2001.
James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Appellee.
GREEN, Judge.
The defendant, James Lyons, was charged by indictment with the premeditated murder of Marlen Zengo. He was convicted after a jury trial. We reverse.
The jury was instructed with respect to premeditated murder and felony murder. The felony murder theory was based on two contentions, the burglary of Zengo's residence and alternatively the robbery of Zengo. It is not disputed that Lyons was initially invited into the residence by Zengo and never secreted himself therein. Even so, the State contended that Lyons was guilty of burglary because Zengo must have withdrawn his consent to Lyons's presence in his residence when the two engaged in a fatal confrontation. Recently, however, the Florida Supreme Court held that simply remaining in a premises after the occupant has withdrawn his consent to the visitor's presence does not constitute burglary unless the visitor remains by concealing himself. Delgado v. State, 776 So.2d 233 (Fla.2000). Thus, one of the State's two felony murder theories was legally inadequate.
The jury returned a single general verdict finding Lyons guilty of murder in the first-degree as charged. Because we are unable to discern whether the jury relied on the legally inadequate burglary theory in order to find Lyons guilty, we are compelled to reverse and remand for a new trial. See Mackerley v. State, 777 So.2d 969 (Fla.2001) (acknowledging that a conviction under a general verdict is improper *37 when it is impossible to determine whether the jury relied upon an inadequate legal theory) (citing Delgado, 776 So.2d 233).
Lyons additionally complains about not having been permitted to testify concerning self-serving statements he made to acquaintances about his self-defense defense, which were consistent with his trial testimony. The trial transcript reflects that the state attorney asked questions on cross-examination of Lyons and made assertions during closing argument which justified allowing Lyons to relate these statements.[1] Although the state attorney attempted to isolate his questions to the statements made by Lyons to the paramedics and officers immediately following the incident, this is not what was insinuated to the jury. It appears the state attorney's comments opened the door for Lyons to testify as to his self-serving statements and the state attorney took advantage of the fact that Lyons could not do so. We caution that this matter should be carefully considered upon retrial. See Smith v. State, 414 So.2d 7 (Fla. 3d DCA 1982) (holding that questions insinuating impeaching facts which are not proved or are nonexistent are impermissible).
Reversed and remanded for new trial.
ALTENBERND, A.C.J., and NORTHCUTT, J., concur.
NOTES
[1] For example, the state attorney asked Lyons the following questions on cross-examination.

Q. Okay. So you're saying from the very beginning of the time you murdered Marlen Zengo you knew it was self-defense but you were keeping it a secret, is that correct?
A. I knew it was self-defense, yeah.
Q. And this is a secret that you were going to keep to yourself?
A. No.
Q. Well, you never told the police?
A. No, I didn't.
The state attorney also made the following comments during final argument.
This is not a case for self-defense where this man, this man right here (indication) even thought he had self-defense. And why is that? Because he never even tried to suggest that to the number of people that he talked to.