815 So.2d 657 (2002)
Curley BRAGGS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2201.
District Court of Appeal of Florida, Third District.
February 13, 2002.
*658 Bennett H. Brummer, Public Defender, and Manuel Alvarez, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO, and RAMIREZ, JJ.

On Hearing En Banc
COPE, J.
In Delgado v. State, 776 So.2d 233 (Fla. 2000), the Florida Supreme Court modified its interpretation of the Florida burglary statute. The legislature thereafter enacted chapter 2001-58, Laws of Florida, which in section 1 states that Delgado had been decided contrary to legislative intent. In section 2, the legislature amended the burglary statute with respect to crimes committed after July 1, 2001.
*659 We took this case en banc to consider whether the effect of section 1 of chapter 2001-58 is to overturn Delgado. We conclude that the correct procedure is to follow Delgado and certify the question whether the Florida Supreme Court will adhere to Delgado in light of the enactment of chapter 2001-58, § 1, Laws of Florida. Hoffman v. Jones, 280 So.2d 431 (Fla.1973).

I.
Defendant was convicted of second degree murder, burglary with an assault, and armed robbery. The evidence showed that the defendant went to the home of an elderly relative, Ruby Stevenson, who had previously lent the defendant money. The physical evidence indicated that Ms. Stevenson voluntarily admitted the defendant to her home. Once inside, the defendant stabbed her to death, stole her jewelry and a bicycle, and left the house. The date of the crime was April 19, 1995.
Under the applicable version of the burglary statute, "`Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1993) (emphasis added).
As of the date of the defendant's crime, the burglary statute had been construed to mean that when a defendant enters a structure with the consent of the victim, and the defendant then commits a crime, the victim (upon becoming aware of the commission of the crime) "implicitly withdraws consent to the perpetrator's remaining in the premises." Ray v. State, 522 So.2d 963, 966 (Fla. 3d DCA 1988); see also Delgado, 776 So.2d at 238. Thus, under the established law at the time of defendant's crime, the burglary conviction in this case was proper.
In 2000, the Florida Supreme Court announced Delgado. In that decision it overruled Ray v. State and several of its own prior decisions interpreting the "remaining in" portion of the burglary statute. As reinterpreted in Delgado, "the `remaining in' language applies only in situations where the remaining in was done surreptitiously." 776 So.2d at 240. Because this defendant's appeal was pending at the time Delgado was announced, defendant is entitled to the benefit of the Delgado decision.[1]
The 2001 legislature disagreed with the Delgado decision and issued a statement of intent in chapter 2001-58, Laws of Florida, as follows:
Section 1. Section 810.015, Florida Statutes, is created to read:

810.015 Legislative findings and intent; burglary.

(1) The Legislature finds that the case of Delgado v. State, Slip Opinion No. SC88638 (Fla.2000) was decided contrary to legislative intent and the case law of this state relating to burglary prior to Delgado v. State. The Legislature finds that in order for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously.

(2) It is the intent of the Legislature that the holding in Delgado v. State, Slip Opinion No. SC88638 be nullified. It is further the intent of the Legislature *660 that s. 810.02(1)(a) be construed in conformity with Raleigh v. State, 705 So.2d 1324 (Fla.1997); Jimenez v. State, 703 So.2d 437 (Fla.1997); Robertson v. State, 699 So.2d 1343 (Fla.1997); Routly v. State, 440 So.2d 1257 (Fla.1983); and Ray v. State, 522 So.2d 963 (Fla. 3rd DCA 1988). This subsection shall operate retroactively to February 1, 2000.

(3) It is further the intent of the Legislature that consent remain an affirmative defense to burglary and that the lack of consent may be proven by circumstantial evidence.
(Underlining in original).
The question for determination here is whether chapter 2001-58 has overruled Delgado. It has not.

II.
There is a preliminary question whether chapter 2001-58 applies to this defendant. The question arises because the Legislature indicated that its statement of intent (quoted above) "shall operate retroactively to February 1, 2000." Ch.2001-58, § 1, Laws of Fla. Since this defendant committed his crime in 1995, at first blush it would appear that chapter 2001-58 does not apply to him at all.
However, it is permissible to consider the legislative history of chapter 2001-58 to determine why the February 1, 2000 date was chosen. It turns out that the Delgado opinion was first released by the Florida Supreme Court on February 3, 2000. Delgado v. State, 25 Fla. L. Weekly S79 (Fla. Feb. 3, 2000).[2] It is evident the February 1 date was chosen in an effort to turn back the clock to the interpretation of the burglary statute as it existed two days prior to the original release of the Delgado opinion. As stated in the House of Representatives legislative history, "The purpose of this provision is to `resettle' the law with respect to pending burglaries and leave them undisturbed by the Delgado decision." House of Representatives Committee on Crime Prevention, Corrections & Safety Final Analysis, Bill No. HB953(PCB CPCS 01-03), June 26, 2001.
It is therefore clear that the statement of intent in chapter 2001-58 is meant to apply to pending cases, which would include the appeal now before us.[3]

III.
Turning to the merits, section 1 of chapter 2001-58 is simply a statement of intent. It expresses the view of the Legislature that Delgado was wrongly decided and should be nullified.
Under these circumstances, the statement of intent is properly viewed as being a statement directed to the Florida Supreme Courtwhich is the only body which can recede from Delgado. Unless and until the Florida Supreme Court overrules Delgado, we are obliged to follow it. Hoffman v. Jones, 280 So.2d at 433-34. Under Hoffman, the appropriate procedure for us to follow is to certify to the Florida Supreme Court the question whether the court will adhere to Delgado in view of section 1 of chapter 2001-58, Laws of Florida.
The State suggests that the Florida Supreme Court has already decided to recede from Delgado. The State relies on the *661 recent opinion in Jimenez v. State, 26 Fla. L. Weekly S 625, 2001 WL1130073 (Fla. Sept. 26, 2001). In that case the court affirmed a trial court order which rejected Jimenez' Delgado-based request for postconviction relief from his burglary conviction. The denial of Delgado relief should come as no surprise because in Delgado itself, the court had already ruled that the Delgado "opinion will not ... apply retroactively to convictions that have become final." 776 So.2d at 241 (citation and footnote omitted).
The State points to a portion of the Jimenez opinion which indicates, "Moreover, in its most recent session, the Legislature declared that Delgado was decided contrary to legislative intent and that this court's interpretation of the burglary statute in Jimenez's direct appeal [which was decided in 1997] was in harmony with legislative intent. Ch.2001-58, § 1, 2001 Fla. Sess. Law Serv. 282, 283 (West)." 26 Fla. L. Weekly at S625-26, 2001 WL 1130073, at * 2. The quoted portion of the Jimenez opinion, however, was a discussion of why the Delgado decision did not meet the test for retroactivity: Delgado was not constitutional in nature and did not have fundamental significance. 26 Fla. L. Weekly at S625, 2001 WL 1130073, at * 2 (citing Witt v. State, 387 So.2d 922 (Fla.1980)).
Perhaps the Florida Supreme Court will recede from Delgado; perhaps not. But at this writing, the court has not done so and we are obliged to follow Delgado. The State concedes that if Delgado applies, the burglary conviction cannot stand. We therefore reverse the conviction on the burglary count.[4]
We certify that we have passed on the following question of great public importance:
WHETHER SECTION ONE OF CHAPTER 2001-58, LAWS OF FLORIDA, HAS LEGISLATIVELY OVERRULED DELGADO V. STATE, 776 So.2d 233 (Fla.2000), FOR CRIMES COMMITTED ON OR BEFORE JULY 1, 2001.

IV.
Defendant contends that the evidence was legally insufficient to convict him of second degree murder and armed robbery. We reject this claim and conclude that the evidence was legally sufficient. See State v. Law, 559 So.2d 187 (Fla.1989).
Defendant was a relative of the elderly female victim, who had loaned him money. The victim was found stabbed to death in her home. Her jewelry box was empty.
Witnesses who knew the defendant testified that he showed them pieces of the victim's jewelry on the day of the murder and was riding a bicycle which had been taken from the victim's home. Defendant had the victim's jewelry in his possession when he was arrested the day after the murder, April 20. When questioned by the police, the defendant told the story that he had obtained the jewelry in a burglary of a home that he could not identify, on April 20but as already stated, he *662 had been seen with the victim's jewelry on the day of the murder, April 19.
The State introduced at trial a DNA analysis of seventeen blood samples which had been taken from the crime scene. All but one of these were DNA-identified as being blood of the victim. However, in one of the blood samples, found on a hallway floor near the victim, there was a mixture of the victim's DNA with the DNA of an unidentified male. The defendant was not the source of that DNA.
The defendant contends that without determining who was the male who was the source of this additional DNA, the State failed to exclude every reasonable hypothesis of innocence, namely that the person who was the source of the additional DNA was the murderer.
We reject this claim. The DNA expert testified that the additional DNA could have come from saliva, sweat, or other bodily fluid or tissue. Police officers and the fire rescue team had been through the crime scene before it was cordoned off. The unidentified DNA was contained in only one sample out of the seventeen collected at the crime scene.
Under State v. Law:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
559 So.2d at 189 (footnote and citations omitted; emphasis in original).
As stated, on the day of the murder the defendant had the victim's jewelry in his possession and was riding a bicycle taken from the victim's home. Those who saw him that day testified that he was agitated, sweating, and acting strangely. The defendant had a cocaine habit and was irritated when one of his friends declined to buy some of the jewelry from him.
The defendant was observed to be emotionally distraught on the day of the murder and the day after. When questioned by the police he told the demonstrably false story that he had obtained the jewelry when he burglarized a home (which he could not identify) on April 20, but witnesses testified that he had the jewelry and bicycle on April 19. While there was DNA from an unidentified male found in one of the seventeen blood spots at the crime scene, there were plausible explanations about how that could have occurred unrelated to the commission of the crime.
Under State v. Law, the evidence was legally sufficient. The defendant relies on Long v. State, 689 So.2d 1055 (Fla.1997), and Cox v. State, 555 So.2d 352 (Fla.1989), but the evidence in those cases was much more attenuated than the evidence in the present case.
The defendant also contends that he was entitled to a mistrial because a witness volunteered the statement that the defendant had been "in and out of jail and stuff like that." The trial court sustained the objection and directed the jury to disregard the witness' last response. This was an isolated comment in a lengthy trial. We find no error in the trial court's conclusion *663 that a curative instruction was sufficient, and that a mistrial was not required. Cole v. State, 701 So.2d 845, 853 (Fla.1997).
Affirmed in part, reversed in part, and question certified.
JORGENSON, LEVY, GERSTEN, GODERICH, FLETCHER, SORONDO and RAMIREZ, JJ., concur.
SCHWARTZ, Chief Judge (specially concurring).
I agree with Judge Green that the Supreme Court either already has overruled Delgado in Jimenez or is so certain to do so in the future that we should recognize it as a fait accompli. Nevertheless, I concur with reversal on the ground that the failure to apply Delgado to Braggs would be unconstitutionally contrary to the ex post facto clause.
Despite the lengths to which the Florida Supreme Court sometimes goes in finding that the law always was what it was the last time it said it, State v. Lanier, 464 So.2d 1192 (Fla.1985), and recognizing that there would be no ex post facto or due process problem in simply overruling Delgado retroactively, see Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001); Wuornos v. State, 644 So.2d 1000 (Fla.1994), cert. denied, 514 U.S. 1069, 115 S.Ct. 1705, 131 L.Ed.2d 566 (1995), I do not believe that this can fairly said to be what is really happening here. To the contrary, it seem obvious that overruling Delgado occurred or will occur only because of chapter 2001-58, Laws of Florida. In other words, if the statute had not been passed, Delgado would be applied to this case, as it was in Lyons v. State, 791 So.2d 36 (Fla. 2d DCA 2001) and Eltaher v. State, 777 So.2d 1203 (Fla. 4th DCA 2001), review denied, 799 So.2d 217 (Fla. 2001). Indeed, Delgado would constitutionally have to be applied to a case such as this one, which was in the "pipeline" when Delgado was decided. Smith v. State, 598 So.2d 1063 (Fla.1992); State v. Gray, 654 So.2d 552 (Fla.1995). To do otherwise as a result of the later statute (no matter how the overruling opinion may be phrased), is simply to give that statute an adverse retroactive effect which, in turn, is directly forbidden by the ex post facto clause. U.S. Const. art. I, § 10, cl.1; Dugger v. Williams, 593 So.2d 180 (Fla. 1991). On that ground alone, I concur in the reversal of the burglary conviction below.
JORGENSON, J., concurs.
GREEN, J. (dissenting in part)
I agree with my colleagues in the majority that the appellant's convictions for second degree murder and armed robbery must be affirmed because the evidence was legally sufficient to support the same. Unlike the majority, however, I believe that we must affirm the appellant's conviction for burglary with an assault based upon Jimenez v. State, 26 Fla. L. Weekly S625, 2001 WL 1130073 (Fla. Sept. 26, 2001). In Jimenez, the Supreme Court acknowledged that it had misconstrued the legislative intent of the burglary statute, section 810.02(1). Fla. Stat. (1991), in deciding Delgado v. State, 776 So.2d 233 (Fla.2000). As pointed out by the majority, the Supreme Court rejected Jimenez's Delgado-based request for post-conviction relief from his burglary conviction on the grounds that Delgado did not apply retroactively to convictions that had become final. See maj. op. at 660, citing to 776 So.2d at 241. Contrary to what is stated in the majority opinion, however, the Supreme Court's second reason for not *664 granting Jimenez's post-conviction relief was the court's specific acknowledgment that it had misconstrued the legislative intent of the burglary statute. The court stated:
Moreover, in its most recent session, the Legislature declared that Delgado was decided contrary to legislative intent and that this Court's interpretation of the burglary statute in Jimenez's direct appeal was in harmony with legislative intent. (emphasis added) (citations omitted).
See Jimenez, supra.
As the plain dictionary meaning of the word "moreover" is "also", "besides" or "beyond what has already been stated"[5], the language quoted from Jimenez was clearly an additional reason offered by the court as to why Jimenez was not entitled to post-conviction relief; and not, as my colleagues in the majority suggest, a discussion of why the Delgado decision had not met the test for retroactivity. See maj. op. at 661. Given the Supreme Court's clear acknowledgment that Delgado was decided contrary to legislative intent, I simply do not understand how the majority remains in a quandary about whether Delgado remains good law. Indeed, in my opinion, the question certified by the majority is really a non-issue that need not be addressed by the Supreme Court in order to resolve the issue presented in this case. I believe that the appellant's conviction for burglary with an assault should be affirmed based upon the court's pronouncement in Jimenez. Although, the Supreme Court did not expressly state in Jimenez that it was receding from Delgado, it is quite clear that is what it did. For that reason, it is unnecessary for us to continue to blindly adhere to Delgado.
SHEVIN, J., concurs.
NOTES
[1] The court stated that the Delgado decision would not apply retroactively to convictions that have become final. Id. at 241.
[2] A revised opinion was issued after consideration of Delgado's motion for rehearing. Delgado v. State, 776 So.2d 233 (Fla.2000).
[3] For crimes committed after July 1, 2001, the Legislature has adopted a new definition of burglary which is designed to define more exactly the "remaining in" portion of the burglary statute. Ch.2001-58, § 2, Laws of Fla. That part of chapter 2001-58 is not involved in the present appeal.
[4] The reversal of the conviction on this count does not necessitate resentencing on the remaining counts. Defendant's guidelines score was for a maximum of 29.4 years. The trial court imposed a departure sentence of life imprisonment on the second degree murder count, and 30 years on the armed robbery count, being in each instance the legal maximum. Reversal of the burglary count would reduce the score by 9.6 months. There is no doubt that if there were a resentencing hearing with a revised scoresheet, the identical departure sentences for murder and robbery would again be imposed. See State v. Mackey, 719 So.2d 284 (Fla.1998); Rubin v. State, 734 So.2d 1089 (Fla. 3d DCA 1999).
[5] See American Heritage Dictionary 1174 (3d ed.1992).