ON MOTION FOR CLARIFICATION

RAMIREZ, J.
We grant appellant Maria Hernandez’s Motion for Clarification and substitute the following opinion for our prior opinion dated June 25, 2003.
Hernandez appeals her conviction and sentence to fifteen years in prison for burglary of an occupied dwelling and petit theft. Because the trial court failed to conduct a Richardson[1] hearing and gave an erroneous, albeit unobjected to, jury instruction, we reverse the burglary con *893 viction. The petit theft conviction is affirmed.
I. The Facts
Appellee State of Florida charged Hernandez with burglary of an occupied dwelling and grand theft of more than $100 and less than $300. At trial, John Spiller, the alleged victim, was the only witness to testify.
The facts to which he testified are somewhat bizarre. He stated that he knew Hernandez and was aware that she was homeless. On April 24, 2001, he was outside of his apartment drinking beer. At approximately 11:00 p.m. on that evening, he returned to his apartment after consuming between eighteen and twenty-four beers. When he entered, he left the front door open and walked into his living room. He was alone in his apartment, except for his dog. He turned on the television to watch the lotto numbers air, but dozed off.
A short time later, a flashing light coming from his bedroom awakened him. When he turned on a light switch, he saw Hernandez in his bedroom coming out of the closet with five bags which he thought contained her personal belongings. She explained that the police had run her off from across the street where she used to live in an empty trailer truck. As Hernandez was walking towards the front door, Spiller offered her a beer. He thought that she would stop and have a beer, but by the time he went to the refrigerator, Hernandez was out the door.
When Spiller opened his refrigerator, he noticed that there was no food left and realized that Hernandez’s bags contained his belongings. He chased Hernandez and managed to retrieve one bag from her. He later contradicted himself by testifying that he ran towards Hernandez to help her with one of the bags that was falling from her shoulders and when he touched the falling bag, he noticed that it was ice cold. He grabbed the ice-cold bag and returned to his apartment.
Spiller also claimed that he reported the incident to a police officer on the street who refused to help him and told Spiller to call 911. He estimated that the value of his loss was close to $300.00. Hernandez was arrested several weeks later.
II. The Discovery Violation
Before Spiller began testifying, the defense requested a sidebar because Spiller was carrying a plastic bag that he had placed on the table at the witness stand. The State replied: “It’s a bag apparently he wants to keep it with him. We’ll ask him to move it .... ” Later during his testimony, the prosecutor asked Spiller: “Did you find anything related to the defendant in your house? Anything at all that .... ” Spiller interjected “yes,” and the prosecutor continued “... you saw when you got back to your house?” Spiller then held up the plastic bag and stated that “I found these. Evidently she [Hernandez] kicked out her shoes when .... ” At this point, defense counsel called for a sidebar. The court excused the jury and then discussed the shoes with Spiller. Spiller described the shoes, claimed that he tried to give them to the police officer who would not fingerprint them, and maintained that the shoes belonged to Hernandez.
Defense counsel requested a curative instruction and a Richardson hearing. He argued that he was prejudiced because he was unaware of the shoes, and the jury had seen the bag and wanted to know what was inside the bag. After a brief discussion, the court concluded that the shoes would not be admitted, but Spiller could testify about the shoes, thus no Richardson violation had occurred. The trial court reasoned that the defense was not prejudiced because they had the opportunity to *894 depose Spiller and failed to ask him whether anything was left in his apartment, and the jury had not seen the bag’s contents.
Without holding a hearing, the court also concluded that the defense was not prejudiced and that the State did not know anything about the shoes.[2] We cannot agree with either conclusion. The defense was obviously prejudiced because Spiller was allowed to testify about the shoes and his assumption that they belonged to Hernandez. The record shows that they were size 11 shoes and when the defense attempted to see if they fit Hernandez, the court prevented it, stating that this was “not the O.J. case.” In closing argument, the State was allowed to extrapolate that (1)the shoes belonged to Hernandez because they were too small for Spiller; (2) she had left them there; (3) Hernandez had removed her shoes and tiptoed around Spiller to go into the kitchen; and (4) she had removed her shoes so as not to awaken Spiller. The shoes were thus an important part of the State’s argument on criminal intent.
Additionally, we cannot agree that the discovery violation was unintentional. The State’s question to Spiller clearly reveals that it knew what was in the bag, a fact candidly admitted at oral argument before this Court. A Richardson hearing would have made it even clearer. While the trial court has discretion to determine whether a discovery violation would result in harm or prejudice to the defendant, “the court’s discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances.” Richardson v. State, 246 So.2d 771, 775 (Fla.1971).
The trial court’s remedy of simply allowing Spiller to testify about the shoes without admitting the shoes into evidence has been previously rejected. In Barrett v. State, 649 So.2d 219 (Fla.1994), the Florida Supreme Court held that a Richardson hearing was required where the State failed to disclose palm prints to the defense, even though the fingerprint expert had only testified about them without introducing them into evidence. In our case, the failure to introduce the shoes may have actually exacerbated the problem because the defense was thereby prevented from arguing that they were too large to belong to Hernandez.
III. The Instructions
The court charged the jury with instructions on burglary and the lesser-included offense of trespass of structure or conveyance. Both instructions indicated that Hernandez could be found guilty of either of the charges by entering or remaining in Spiller’s apartment. Defense counsel did not object to the jury instructions.
The “remaining in” language in a burglary instruction only applies in situations where the “remaining in” is surreptitious. See Delgado v. State, 776 So.2d 233, 240 (Fla.2000); Braggs v. State, 815 So.2d 657, 659 (Fla. 3d DCA 2002). In Delgado, the Florida Supreme Court emphasized that the “remaining in” clause should be limited to the defendant who surreptitiously remains because “in the context of an occupied dwelling, burglary was not intended to cover the situation where an invited guest turns criminal or violent. Rather, burglary was intended to criminalize the conduct of a suspect who terrorizes, shocks, or surprises the unknowing occupant.” Delgado, 776 So.2d at 240. We cannot agree that the inclusion of the “remaining in” language in the burglary instruction in this case, without an in *895 struction that the “remaining in” be surreptitious, did not constitute fundamental error.
The jury in this case could have very well concluded that Hernandez formed the intent to commit burglary while she remained in the apartment. There is undisputed evidence that Spiller knew Hernandez and that Hernandez entered Spiller’s apartment through an open front door while Spiller slept. When Spiller awoke, Hernandez’s presence did not startle him and he was not at all upset to find Hernandez inside his apartment. He in fact offered Hernandez a beer and exchanged words with her. Spiller also saw Hernandez place some of her bags in his bedroom closet, and Spiller thought that the bags contained her belongings and that she wanted to leave them in his apartment for the night. The jury could have found the storage of her belongings as a basis for Hernandez to be in Spiller’s apartment. Hernandez’s entry is thus not necessarily consistent with the purpose to commit burglary.
We therefore reverse the burglary conviction and remand the case for a new trial, but affirm the petit theft conviction.

. Richardson v. State, 246 So.2d 771 (Fla.1971).

. In its pre-trial discovery response, the State asserted that there were no tangible papers or objects obtained from or belonging to Spiller. At trial, the State maintained that it was unaware that Hernandez had brought the shoes into the courtroom.