861 So.2d 78 (2003)
Daniel Anthony BURNES, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-352.
District Court of Appeal of Florida, Third District.
October 29, 2003.
Bennett H. Brummer, Public Defender, and Robert Godfrey Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and GODERICH, and WELLS, JJ.
WELLS, J.
Daniel Anthony Burnes appeals from his conviction for armed burglary with assault contending that Delgado v. State, 776 So.2d 233 (Fla.2000), requires reversal. We agree and reverse.
Burnes was convicted on two counts of second degree murder and on one count of burglary with assault resulting from events that occurred during the evening of February 7 and in the early morning hours of February 8, 1999.[1] The evidence showed that Burnes, Bernard Clark and Clifton Felder were together throughout the evening of February 7, first at Clark's home, then at the home of a third person, and ultimately at Clark's home again. It appears from the record that Burnes was voluntarily admitted to Clark's home on each occasion and that within minutes after Burnes made a number of telephone calls from Clark's home on February 8, shots were heard and Clark and Felder were found dead inside Clark's home.
Burnes was charged with burglary then defined as "entering or remaining in a dwelling ... with the intent to commit an offense therein...." § 810.02(1), Fla. Stat. (1999). At the time Burnes committed this crime and was charged, the "remaining in" portion of the burglary statute could be *79 proved by showing commission of a crime following consensual entry because the victim, upon learning of the crime, "implicitly withdraws consent to the perpetrator's remaining in the premises." E.g., Ray v. State, 522 So.2d 963, 966 (Fla. 3d DCA 1988).
However, on February 3, 2000, the Florida Supreme Court decided Delgado,[2] in which it receded from several of its own prior decisions, to interpret the "remaining in" portion of the burglary statute to apply "only in situations where the remaining in was done surreptitiously." Delgado, 776 So.2d at 240.
Burnes was tried in October 2001. Relying on Delgado, Burnes moved for a judgment of acquittal claiming that there was no evidence that he remained in Clark's home surreptitiously. The State conceded the lack of evidence on this element but successfully argued that Delgado was inapplicable because the Legislature had overruled it. The State reasserts that same argument here and additionally claims that because this case was not "pending" at the time Delgado was decided, Delgado is inapplicable. We disagree on both points.
The State correctly contends that while amending the burglary statute, to in part reconfirm the pre-Delgado definition of burglary, the Legislature expressly stated that Delgado "was decided contrary to legislative intent and the case law of this state relating to burglary prior to Delgado," and that the Legislature intended that Delgado "be nullified." Ch.2001-58, §§ 1, 2, Laws of Fla. However, in Braggs v. State, 815 So.2d 657 (Fla. 3d DCA 2002)(en banc), review granted, 829 So.2d 919 (Fla.2002), we concluded that the Legislature's post-Delgado statement of intent did not overrule Delgado, because "the Florida Supreme Court ... is the only body which can recede from Delgado. Unless and until the Florida Supreme Court overrules Delgado, we are obliged to follow it." Braggs, 815 So.2d at 659-660 (citation omitted).
We also rejected the notion that the Florida Supreme Court had receded from Delgado. As we pointed out, "[p]erhaps the Florida Supreme Court will recede from Delgado; perhaps not. But at this writing, the court has not done so and we are obliged to follow Delgado." Braggs, 815 So.2d at 661.
The fact that the Supreme Court has not yet receded from Delgado (and that Delgado survived the enactment of section 810.015) was recently confirmed by Fitzpatrick v. State, 859 So.2d 486, 2003 WL XXXXX-XXX (Fla. Sept. 11, 2003), where the Florida Supreme Court applied Delgado to reverse a first-degree murder conviction and sentence of death. In Fitzpatrick, as here, the crime was committed before the initial release of Delgado on February 3, 2000, and before February 1, 2000, the date on which the Legislature's attempted nullification of Delgado was to become effective. And, Fitzpatrick, like Burnes, was tried, convicted and sentenced after Delgado (February 3, 2000), and after the effective date of the statement of Legislative intent (February 1, 2000). The Fitzpatrick court nonetheless applied Delgado to reverse Fitzpatrick's conviction and sentence.
As Justice Wells' dissent in Fitzpatrick makes crystal clear, burglaries "committed" before the July 1, 2001 amendment to section 810.02 (which expressly defined burglary as both surreptitiously *80 remaining in and remaining in with the intent to commit an offense after permission to remain has been withdrawn), but not adjudicated to finality ("meaning affirmed on direct appeal")[3] before Delgado, must satisfy Delgado:
... [W]e presently have the following situation. We have individuals serving sentences for valid convictions of burglary... based on the burglary statute as construed by this Court prior to Delgado. Those sentences are being served in conformity with a construction of the burglary statute which the Legislature has stated was as the Legislature intended. See § 810.015, Fla. Stat. (2001). Those sentences are also being served in conformity with the present application of the burglary statute for offenses committed after July 1, 2001. See § 810.02(1)(b), Fla. Stat. (2002).
Yet, we also have individuals such as the defendant in the instant case, who are convicted of committing the same elements of a crime as the individuals described above based on similar facts that occurred during the same time period, who will nonetheless have their convictions reversed because their convictions were not "final" prior to the issuance of Delgado. This is true even though the language of the burglary statute did not change and was precisely the same express language for both those individuals whose convictions were final and those whose convictions were not final prior to Delgado. Furthermore, we have individuals who have yet to be prosecuted for burglary who will potentially receive the benefit of Delgado simply because the events leading to their prosecution were committed on or before July 1, 2001.
* * *
... Continuing to follow the Delgado decision ... will result in similar facts receiving dissimilar treatment in the courts, depending solely on when an offender's conviction became final or whether the alleged criminal activities occurred on or before July 1, 2001....
See Fitzpatrick, 859 So.2d at 493-94, Wells, J. dissenting (emphasis added). In sum, Delgado has not been receded from and applies to crimes committed but not adjudicated to finality before that decision.
Based on the fact that there was no evidence that Burnes remained "surreptitiously" in Clark's home, and on the State's concession below that if Delgado applied, Burnes' motion for judgment of acquittal had to be granted, Burnes' conviction for burglary is reversed and this matter remanded for further proceedings consistent with this opinion.[4]
NOTES
[1] Burnes does not challenge the murder convictions.
[2] The original decision in Delgado was issued February 3, 2000. The opinion was withdrawn and superseded on rehearing on August 24, 2000, in Delgado v. State, 776 So.2d 233 (Fla.2000).
[3] Fitzpatrick, 859 So.2d at 493.
[4] As we did in Braggs and Ruiz v. State, 841 So.2d 468, 469 n. 1 (Fla. 3d DCA 2002), review granted, 829 So.2d 919 (Fla.2002), we certify that we have passed on the following question of great public importance:

WHETHER SECTION ONE OF CHAPTER 2001-58, LAWS OF FLORIDA, HAS LEGISLATIVELY OVERRULED DELGADO v. STATE, 776 So.2d 233 (Fla.2000) FOR CRIMES COMMITTED ON OR BEFORE JULY 1, 2001?