863 So.2d 1205 (2003)
STATE of Florida, Petitioner,
v.
Roberto RUIZ, Respondent.
State of Florida, Petitioner,
v.
Curley Braggs, Respondent.
Nos. SC02-389, SC02-524.
Supreme Court of Florida.
December 18, 2003.
*1206 Charles J. Crist, Jr., Attorney General, Michael J. Neimand, Assistant Attorney General, Bureau Chief, and Frank J. Ingrassia, Assistant Attorney General, Fort Lauderdale, FL, and Paulette R. Taylor, Assistant Attorney General, Miami, FL, for Petitioner.
Bennett H. Brummer, Public Defender, and Manuel Alvarez, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL; and May L. Cain, Special Assistant Public Defender of Cain & Snihur, North Miami Beach, FL, for Respondents.
PARIENTE, J.
We have for review two decisions of the Third District Court of Appeal, which each certified the following question of great public importance:
WHETHER SECTION ONE OF CHAPTER 2001-58, LAWS OF FLORIDA, HAS LEGISLATIVELY OVERRULED DELGADO V. STATE, 776 So.2d 233 (Fla.2000), FOR CRIMES COMMITTED ON OR BEFORE JULY 1, 2001.
Ruiz v. State, 841 So.2d 468, 468 n. 1 (Fla. 3d DCA 2002); Braggs v. State, 815 So.2d *1207 657, 661 (Fla. 3d DCA 2002).[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because the certified question posed by the Third District raises constitutional issues regarding separation of powers that we need not reach to resolve these cases, we rephrase the certified question as follows:
WHETHER SECTION 1 OF CHAPTER 2001-58, LAWS OF FLORIDA, WHICH IS CODIFIED AT SECTION 810.015, FLORIDA STATUTES (2002), APPLIES TO CONDUCT THAT OCCURRED PRIOR TO FEBRUARY 1, 2000.
For the reasons that follow, we answer the rephrased question in the negative.

FACTS AND PROCEDURAL HISTORY
Both Curley Braggs and Roberto Ruiz were convicted of burglary and other offenses based on conduct that occurred prior to February 1, 2000. The convictions for the other offenses, second-degree murder and armed robbery in Braggs' case, and kidnapping and battery in Ruiz's case, were affirmed by the Third District and are not at issue in this case. The sole issue is the validity of their burglary convictions.
Both Braggs and Ruiz had direct appeals of their convictions pending when this Court decided Delgado v. State, 776 So.2d 233, 240 (Fla.2000), in which we held that the phrase "remaining in" found in Florida's burglary statute, section 810.02(1), Florida Statutes (1989), applied "only in situations where the remaining in was done surreptitiously."[2] After Delgado and during the 2001 legislative session, the Florida Legislature amended the burglary statute. See Ch.2001-58, Laws of Fla. Specifically, section 1 of chapter 2001-58, which is the subject of the certified question, created section 810.015, Florida Statutes (2002):
810.015 Legislative findings and intent; burglary.
(1) The Legislature finds that the case of Delgado v. State, Slip Opinion No. SC88638 (Fla.2000) was decided contrary to legislative intent and the case law of this state relating to burglary prior to Delgado v. State. The Legislature finds that in order for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously.
(2) It is the intent of the Legislature that the holding in Delgado v. State, Slip Opinion No. SC88638 be nullified. It is further the intent of the Legislature that s. 810.02(1)(a) be construed in conformity with Raleigh v. State, 705 So.2d 1324 (Fla.1997); Jimenez v. State, 703 So.2d 437 (Fla.1997); Robertson v. State, 699 So.2d 1343 (Fla.1997); Routly v. State, 440 So.2d 1257 (Fla.1983); and Ray v. State, 522 So.2d 963 (Fla. 3rd DCA, 1988). This subsection shall operate retroactively to February 1, 2000.
(3) It is further the intent of the Legislature that consent remain an affirmative defense to burglary and that the lack of consent may be proven by circumstantial evidence.
(Emphasis supplied.)[3]
*1208 The question posed by these two cases is whether the Legislature's declared intent regarding Delgado is applicable to conduct that occurred prior to February 1, 2000. Delgado directly impacts Braggs' and Ruiz's burglary convictions because in each case the initial entry into the victim's residence was consensual and there was no evidence in either case of a burglary other than the commission of crimes within the residence.
In Ruiz, the victim testified that she had lived with Ruiz from October 1997 through December 1997, and that on January 3, 1998, she allowed Ruiz to come into her apartment so he could retrieve some of his belongings. The victim stated that when they went into the bedroom, Ruiz shut and locked the door, began to hit her, and eventually sexually assaulted her. The only evidence of a burglary was Ruiz's commission of the other crimes, specifically kidnapping and battery, once he was inside the victim's residence.[4] In other words, Ruiz's conviction for burglary was based solely on the evidence that he committed the crimes of kidnapping and battery within the residence.
In Braggs,
[t]he evidence showed that the defendant went to the home of an elderly relative, Ruby Stevenson, who had previously lent the defendant money. The physical evidence indicated that Ms. Stevenson voluntarily admitted the defendant to her home. Once inside, the defendant stabbed her to death, stole her jewelry and a bicycle, and left the house.
815 So.2d at 659. Trial testimony established that the victim's home had burglar bars on the doors and windows, that the victim normally kept the gate on the door locked, and that there were no signs of forced entry. As in Ruiz, the only evidence that Braggs committed a burglary in this case was his commission of other crimes inside the victim's home, specifically second-degree murder and armed robbery.[5] In other words, the only evidence to support a burglary conviction in Braggs' case was his commission of the crimes of armed robbery and second-degree murder within the victim's residence.
On appeal, Braggs and Ruiz argued that because the evidence showed that they entered the victims' homes with permission and did not surreptitiously remain, their burglary convictions should be vacated pursuant to Delgado. In Braggs, the Third District concluded that because Braggs' appeal was pending when Delgado was decided, he was entitled to the benefit of that decision. See 815 So.2d at 659. The State asserted that this Court had receded from Delgado but conceded that if Delgado applied, Braggs' burglary conviction could not stand. See id. at 660-61. The Third District determined that this Court had not receded from Delgado and *1209 that Delgado applied to Braggs' case. See id. at 661.
In Braggs, the Third District also addressed what effect, if any, the Legislature's enactment of chapter 2001-58 had on Braggs' burglary conviction. Specifically, the Third District addressed "whether the effect of section 1 of chapter 2001-58[was] to overturn Delgado." 815 So.2d at 659. After determining that the statute applied to Braggs' case, the Third District concluded that section 1 of chapter 2001-58 (now section 810.015, Florida Statutes (2002)) was "simply a statement of intent" and "expresse[d] the view of the Legislature that Delgado was wrongly decided and should be nullified." Id. at 660. The Third District further concluded that unless and until this Court overrules Delgado, lower courts are required to follow that decision. See id. Accordingly, the Third District reversed Braggs' burglary conviction and certified the question of great public importance to this Court.
In Ruiz, the Third District concluded that once Ruiz established that his entry into the victim's residence was consensual and that he did not surreptitiously remain, the evidence was insufficient to establish the crime of burglary. See 841 So.2d at 469. As in Braggs, the Third District reversed Ruiz's burglary conviction and certified the question of great public importance. See id. at 468-69 & n. 1. Because the Third District's decision in Ruiz was based on Braggs, the Ruiz opinion does not contain any analysis of chapter 2001-58. See id. at 468-69.

ANALYSIS
The threshold issue decided by the Third District is whether the expression of legislative intent to nullify Delgado retroactive to February 1, 2000, contained in section 810.015(2) applies to Braggs and Ruiz, whose conduct occurred in 1995 and 1998, respectively. The Third District determined that section 810.015(2) was intended to apply to cases such as Braggs' and Ruiz's, which were in the "pipeline"[6] at the time Delgado was decided, based on the legislative history of chapter 2001-58. See Braggs, 815 So.2d at 660. We conclude that the Third District erred in going beyond the plain meaning of section 810.015(2), which, as the Third District acknowledged, by its own terms does not apply to those defendants whose conduct occurred prior to February 1, 2000. See id.
"[T]he plain meaning of statutory language is the first consideration of statutory construction." State v. Bradford, 787 So.2d 811, 817 (Fla.2001) (quoting Capers v. State, 678 So.2d 330, 332 (Fla.1996)). "Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 323 (Fla. 2001) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992)).
In this case, the Legislature specified that section 810.015(2), which states an intent to nullify Delgado, was to apply retroactively to February 1, 2000. We recently explained in Floyd v. State, 850 So.2d 383 (Fla.2002), that the express language of section 810.015(2) makes it inapplicable to cases where the conduct occurred before February 1, 2000:

*1210 We are aware that in enacting section 810.015(2), Florida Statutes (2001), the Legislature stated its intent "that the holding in Delgado ... be nullified." However, the Legislature also stated that subsection (2) of § 810.015 would "operate retroactively to February 1, 2000." The events in Floyd's case occurred well before February 1, 2000. Therefore, because the events in Floyd's case do not fall within the window established by the Legislature for retroactive application of section 810.015(2), we need not address the issue of the retroactive effect of the statute. See R.C. v. State, 793 So.2d 1078, 1079 n. 1 (Fla. 2d DCA 2001) (reversing defendant's conviction for burglary of a dwelling, based on Delgado v. State, and noting that the Legislature's language in section 810.015(2) regarding the nullification of Delgado did not apply because the defendant's actions took place prior to February 1, 2000).
Id. at 402 n. 29 (emphasis supplied). Based on our decision in Floyd, we conclude that section 810.015(2) is inapplicable to Braggs' and Ruiz's cases because their conduct occurred before February 1, 2000.
We next address the State's argument that we have receded from Delgado or, in the alternative, that we should now recede from Delgado. The State contends that we receded from Delgado in our decision in Jimenez v. State, 810 So.2d 511, 513 (Fla.2001). However, the only issue in Jimenez was whether Delgado should be applied retroactively, utilizing the criteria for retroactive application of a decision already final set forth in Witt v. State, 387 So.2d 922 (Fla.1980). See Jimenez, 810 So.2d at 512-13. The defendant's conviction in Jimenez was final and the defendant filed his 3.850 motion arguing for retroactivity "immediately" after the release of Delgado. Jimenez, 810 So.2d at 512.
The State nevertheless asserts that our statement in Jimenez acknowledging that the Legislature "declared that Delgado was decided contrary to legislative intent," indicates that this Court has receded from Delgado. See 810 So.2d at 513. The State takes this statement out of context because the effect of chapter 2001-58 was not at issue in Jimenez. We agree with the Third District, which rejected the State's argument in Braggs, explaining that "[t]he quoted portion of the Jimenez opinion ... was a discussion of why the Delgado decision did not meet the test for retroactivity: Delgado was not constitutional in nature and did not have fundamental significance." 815 So.2d at 661. Further, as we have made clear, "this Court does not intentionally overrule itself sub silentio." Puryear v. State, 810 So.2d 901, 905 (Fla.2002).
We also decline to recede from Delgado. As the Supreme Court of the State of Florida, "one of our primary judicial functions is to interpret statutes and constitutional provisions." Locke v. Hawkes, 595 So.2d 32, 36 (Fla.1992). In Delgado, we interpreted the burglary statute and concluded that the "remaining in" language applied only in cases where the "remaining in" was done surreptitiously. See 776 So.2d at 240. This decision was based on our conclusion that the Third District's reasoning in Ray v. State, 522 So.2d 963 (Fla. 3d DCA 1988), which was previously accepted by this Court, "leads to an absurd result." Delgado, 776 So.2d at 241.[7] We explained:
[I]f we make the assumption that "a person would not ordinarily tolerate another person remaining in the premises *1211 and committing a crime," and assuming that this withdrawn consent can be established at trial, a number of crimes that would normally not qualify as felonies would suddenly be elevated to burglary. In other words, any crime, including misdemeanors, committed on another person's premises would become a burglary if the owner of the premises becomes aware that the suspect is committing the crime. Obviously, this leads to an absurd result. For example, if a person hosts a party and catches an invitee smoking marijuana on the premises, the invitee is not only guilty of a misdemeanor marijuana charge but also of burglary, a second-degree felony. The same can be said of the invitee who writes a bad check for pizza in front of an aware host. The other extreme is also true. An invitee who commits second-degree murder on another person's premises and in the presence of an aware host could be charged with first-degree felony murder, with the underlying felony being burglary. The possibility exists that many homicides could be elevated to first-degree murder, merely because the killing was committed indoors.

Delgado, 776 So.2d at 239 (emphasis supplied). Thus, the essence of Delgado is that evidence of a crime committed inside the dwelling, structure, or conveyance of another cannot, in and of itself, establish the crime of burglary. Stated differently, the State cannot use "the criminal act to prove both intent and revocation" of the consent to enter. Id. at 238.
In Smith v. State, 598 So.2d 1063, 1066 (Fla.1992), we held that "any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final." We concluded that this result was mandated by "the principles of fairness and equal treatment ... which are embodied in the due process and equal protection provisions of article I, sections 9 and 16 of the Florida Constitution." Id. Thus, under Smith this Court's interpretation of the burglary statute in Delgado became applicable to any pending cases on review and not yet final when Delgado was decided. If we were to now recede from Delgado, defendants like Braggs and Ruiz would be treated differently than other similarly situated defendants whose appeals were pending at the time Delgado was decided and who have already received relief. See, e.g., Lyons v. State, 791 So.2d 36, 36 (Fla. 2d DCA 2001) (reversing for a new trial where, in light of Delgado, the general verdict finding Lyons guilty of first-degree murder made it impossible to discern whether the jury relied on the legally inadequate theory of burglary), review denied, 831 So.2d 673 (Fla.2002); Eltaher v. State, 777 So.2d 1203, 1204 (Fla. 4th DCA) (reversing conviction of trespass, the lesser included offense of burglary, based on Delgado), review denied, 799 So.2d 217 (Fla. 2001). Such disparate treatment cannot be reconciled with the constitutional principles on which our decision in Smith rests.[8]
*1212 Accordingly, the burglary convictions in Braggs' and Ruiz's cases cannot stand. However, we emphasize that the reversal of these burglary convictions does not affect the validity of Braggs' and Ruiz's other convictions, which were affirmed by the Third District. See Ruiz, 841 So.2d at 469; Braggs, 815 So.2d at 661.[9]

CONCLUSION
Based on the forgoing, we answer the rephrased question in the negative and hold that section 1 of chapter 2001-58, which is codified at section 810.015, Florida Statutes (2002), is not applicable to conduct that occurred prior to February 1, 2000. We approve the decisions of the Third District in Braggs and Ruiz, but disapprove the Third District's reasoning in Braggs to the extent it is inconsistent with this decision.
It is so ordered.
LEWIS and QUINCE, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion, in which PARIENTE, J., concurs.
WELLS, J., dissents with an opinion, in which CANTERO and BELL, JJ., concur.
ANSTEAD, C.J., specially concurring.
I agree with the majority opinion and write separately only to again note the very simple and long recognized principle applied in Delgado that the separate and distinct crime of burglary is not automatically established every time an invited guest commits a crime on the premises to which he was invited. In other words, if one friend invites another over to watch the Super Bowl, and the invited guest becomes angry at his host because of the way the game is going, and punches his host in the nose, the guest may be guilty of the crime of battery, but the guest would not also be automatically guilty of burglary. However, under the position advocated by the dissent, a burglary would be automatically committed when the battery occurs. Most people would be surprised to learn that a burglary was committed when the guest punched his host in the nose. A battery, sure, but a burglary? After all, the guest was invited onto the host's premises, and the guest's presence was not unlawful.
In Delgado this Court cited long-established legal authority, including the well-respected Model Penal Code, that had long ago rejected an extension of the crime of burglary to automatic status once a guest commits any crime on his host's premises. See Delgado, 776 So.2d at 236-38. The opinion in Delgado also relied on decisions from other states that had burglary statutes identical to that of Florida, but that had rejected the extension of the crime of burglary to automatically occur upon the commission of any other crime on the host's premises. For example, the Delgado opinion cited the opinion of the New York courts which had pointedly rejected this extension of the crime of burglary:
A review of New York case law reveals that the statute is being interpreted consistent with the commentary of the Model Penal Code. In People v. Hutchinson, 124 Misc.2d 487, 477 N.Y.S.2d 965, 968 (Sup.Ct.1984), aff'd, 121 A.D.2d 849, 503 N.Y.S.2d 702 (1986), appeal denied, 68 N.Y.2d 770, 506 N.Y.S.2d 1054, 498 N.E.2d 156 (1986), the court held that once a person is lawfully on the premises, "there must be something more to *1213 establish termination of license than the commission of a criminal act or an order to leave after a criminal intention is manifested." The State argued that a defendant violated this statute when he entered a private home with permission but subsequently pulled a knife on the owner. The State reasoned that upon pulling the knife, any consent was automatically revoked. The court rejected this argument and reasoning, holding that if a criminal defendant entered with consent, his subsequent commission of a criminal act alone could not convert a lawful entry into an unlawful remaining sufficient to sustain a burglary charge. The court stated:
[The State's] reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was intended is an insufficient basis for finding that the entry or remaining was without privilege or authority.

Id. at 967. The court recognized that the State was improperly using the criminal act to prove both intent and revocation of license or privilege. The court further stated:
If this jury concludes that the defendant was in the complainant's apartment with genuine license, that is, with her consent obtained without deceit, the fact that he was unwelcome after he pulled the knife does not convert his licensed entry into an unlawful remaining. His licensed presence there is not revoked by the commission of a criminal act.

Id. at 968. In People v. Gaines 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913, 915 (1989), the court addressed the addition of the "remains unlawfully" language in the New York statute, and stated that "the Legislature was plainly addressing a different factual situationnot one of unlawful entry but of unauthorized remaining in a building after lawful entry (as a shoplifter who remains on the store premises after closing)."
Id. at 237-38. So, Delgado was well reasoned and based on firm authority as well as the essential common sense notion that the crime of burglary is fundamentally based upon an unlawful presence on private premises, and the unlawful presence cannot be established merely upon proof of a guest's commission of another crime while on the host's premises.
PARIENTE, J., concurs.
WELLS, J., dissenting.
I repeat the view I set forth in my dissenting opinion in Fitzpatrick v. State, 859 So.2d 486, 492-95 (Fla.2003). It is increasingly apparent that in the interest of the proper administration of justice in Florida, this Court should confront the problems created by this Court's decision in Delgado v. State, 776 So.2d 233 (Fla. 2000), and recede from Delgado. I am committed to the doctrine of stare decisis, but what occurred in this instance is that Delgado failed to adhere to the doctrine of stare decisis by not following this Court's seventeen-year-old precedent in Routly v. State, 440 So.2d 1257 (Fla.1983). Rather, Delgado rewrote the burglary statute, which was adopted by the Legislature in 1979, resulting in confusing and disparate applications.
*1214 As to the majority's analysis in this case, I find it to be a patent misreading of this 2001 statute to state that the plain meaning of that statute "does not apply to those defendants whose conduct occurred prior to February 1, 2000." A plain-meaning analysis does not properly disregard the plain intent of the Legislature in enacting a statute.
As the en banc majority opinion of the Third District stated in Braggs v. State, 815 So.2d 657, 660 (Fla. 3d DCA 2002):
It is evident the February 1 date was chosen in an effort to turn back the clock to the interpretation of the burglary statute as it existed two days prior to the original release of the Delgado opinion.
The Third District is indisputably correct in view of the fact that the Delgado opinion was issued on February 3, 2000.
Importantly, in Jimenez v. State, 810 So.2d 511, 513 (Fla.2001) (Jimenez II), in deciding that Delgado was not to be applied retroactively, this Court expressly recognized that the adoption of the 2001 statute was a declaration by the Legislature that Delgado was decided contrary to legislative intent. This Court said:
Moreover, in its most recent session, the Legislature declared that Delgado was decided contrary to legislative intent and that this Court's interpretation of the burglary statute in Jimenez's direct appeal was in harmony with the legislative intent. Ch.2001-58, § 1, 2001 Fla. Sess. Law. Serv. 282, 283 (West).
Judge Green, in her dissenting opinion in Braggs, was precisely correct as to this Court's statement: "Given the Supreme Court's clear acknowledgment that Delgado was decided contrary to legislative intent...." Braggs v. State, 815 So.2d at 664. Thus, the majority's analysis in this case is not only a misreading of the 2001 statute, it is a reading directly contrary to and in conflict with this Court's reading of the same statute in Jimenez II.
The quoted statement from Floyd v. State, 850 So.2d 383, 402 n. 29 (Fla.2002), concerning a "window established by the Legislature for retroactive application," is likewise incorrect. Rather, it is clear beyond peradventure that the Legislature intended that the 1979 burglary statute be construed as it had been from the date of the burglary statute's adoption in 1979 until the issuance of the Delgado opinion on February 3, 2000. To accomplish this, the Legislature adopted this statute to nullify this Court's Delgado rewrite of the burglary statute.
The majority's stated concern that "[i]f we were to now recede from Delgado, defendants like Braggs and Ruiz would be treated differently than other similarly situated defendants whose appeals were pending at the time Delgado was decided and who have already received relief," majority op. at 11-12, is misdirected. As I pointed out in Fitzpatrick, the Delgado decision itself is what results in the disparate treatment of many defendants who committed the very same crime on the very same day.
For example, assume that another person who was living in the Third District did the very same acts as Ruiz on January 3, 1998, when Ruiz committed his crime, was captured shortly thereafter, and convicted[10] in a speedy trial of burglary on the basis of the burglary statute. That person would have been convicted of violating the same statute containing the exact language as the burglary statute under which Ruiz was convicted. The trial judge would have given the standard jury instruction on burglary because the standard instruction followed the words used in the *1215 burglary statute. Of course, neither the statute nor the jury instruction used the word "surreptitious." Since that person had a conviction without delay, that person's conviction could have become final before the Delgado decision became final, either because no appeal was taken or because the burglary conviction was affirmed in accord with the statute, the standard jury instruction, and with the decisions of this Court in Routly v. State, 440 So.2d 1257 (Fla.1983), of the Third District in Ray v. State, 522 So.2d 963 (Fla. 3d DCA 1988), and of this Court in Raleigh v. State, 705 So.2d 1324 (Fla.1997), Jimenez v. State, 703 So.2d 437 (Fla.1997) (Jimenez I), and Robertson v. State, 699 So.2d 1343 (Fla.1997). That person would remain convicted of the crime because of a violation of the same statute, which contains the same words, based on the same conduct as Ruiz, whose conviction the majority here overturns.
Because of the need to remove from our law the problems which the Delgado change of law has created, and in recognition that this is the Legislature's will in respect to the construction of this statutory crime, I would give effect to the plain intent of the 2001 statute and recede from Delgado. I would then rephrase the certified question and answer that the burglary statute should be construed as it was construed by this Court and the Third District prior to the issuance of the Delgado decision.
CANTERO and BELL, JJ., concur.
NOTES
[1] For purposes of oral argument, on our own motion, we consolidated these two cases. On our own motion, we now consolidate these cases for disposition in this opinion.
[2] The 1989 version of the burglary statute provided: "`Burglary' means entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1989).
[3] The Legislature also enacted a new definition of burglary for crimes committed after July 1, 2001, that, among other changes, includes a definition of the "remaining in" language. See ch.2001-58, § 2, Laws of Fla. (codified at § 810.02(1)(b), Fla. Stat. (2002)). This new definition of burglary does not apply to the conduct in this case, which occurred prior to the effective date of the legislation.
[4] At the time Ruiz committed these offenses, burglary was defined as "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1997).
[5] At the time Braggs committed these offenses, burglary was defined as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." § 810.02(1), Fla. Stat. (1993).
[6] Pipeline cases are those cases pending on direct appellate review or are otherwise not yet final at the time of a pertinent change in the law. See Smith v. State, 598 So.2d 1063, 1066 n. 5 (Fla.1992).
[7] In Raleigh v. State, 705 So.2d 1324, 1328-29 (Fla.1997), Jimenez v. State, 703 So.2d 437, 440-41 (Fla.1997), and Robertson v. State, 699 So.2d 1343, 1346-47 (Fla.1997), we followed Ray's reasoning without significant discussion.
[8] As noted by Justice Wells in his dissenting opinion, there will be individuals who were convicted of burglary before Delgado who will not benefit from that decision even if they committed the exact same acts as Ruiz. See dissenting op. at 1215. However, as also explained by Justice Wells in his dissenting opinion in Fitzpatrick v. State, 859 So.2d 486, 494 (Fla.2003), "it can be argued that you always have this kind of disparate treatment when a Witt analysis leads to a determination that a change in the decisional law will not be applied retroactively." (Wells, J., dissenting). This consequence of our decision that Delgado should not be applied retroactively cannot be used as a basis to alter Braggs' and Ruiz's rights under Smith, in which this Court made a clear distinction between cases on collateral review and those in the "pipeline." See 598 So.2d at 1066 n. 5.
[9] We decline to address the additional issues raised by Braggs and Ruiz that are beyond the scope of the certified question. See Wheaton v. State, 789 So.2d 975, 975 n. 2 (Fla. 2001); McMullen v. State, 714 So.2d 368, 373 (Fla.1998).
[10] Perhaps the person pled guilty or nolo contendere.