784 So.2d 1198 (2001)
Darren TINKER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4710.
District Court of Appeal of Florida, Second District.
April 11, 2001.
James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
Darren Tinker appeals his conviction for burglary of an occupied dwelling with a battery. It is asserted that the trial court's instruction concerning the offense of burglary with a battery was erroneous and the prosecutor misstated the law in his closing argument. We agree and reverse and remand for a new trial.
*1199 Tinker and the victim had been in an "on again, off again" relationship. At the time of the offense, the two were not seeing each other. On the day in question, the victim arrived home from work to discover that Tinker was inside her apartment without her permission. She asked Tinker to leave, but he refused. The victim left the apartment for a short time, and when she returned, Tinker was still there. After repeatedly asking Tinker to leave, the victim eventually called the police. In the presence of the police officers, the victim told Tinker that she did not want him in her apartment. Before he left, the police officers required Tinker to sign a trespass warning which indicated he would be arrested if he returned to the property.
Tinker called the victim several times during the evening, asking her to renew their relationship. The victim refused and eventually left the telephone off the hook. She fell asleep and when she awoke, she found that Tinker was once again inside her apartment without permission. Tinker was sitting on the end table near the couch on which she was lying. He did not move, but told her she was beautiful. The victim could tell that Tinker had been drinking. The frightened victim ran from the living room into the bedroom to call the police, but the telephone was entangled in the blankets on her bed and she was unable to free it because she was struggling with Tinker. As she attempted to get away by running down the hallway, Tinker struck her in the back and she fell on her stomach. Tinker also pulled her hair to the extent that a "massive clump of hair" came out in his hand. The victim screamed. Tinker threatened her and told her to remain quiet. Eventually, after Tinker had pleaded with the victim to take him back and she had refused, he left the apartment. The victim then called the police and Tinker was taken into custody.
Tinker was charged with burglary with a battery in violation of section 810.02(2)(a), Florida Statutes (1997), for entering or remaining in the dwelling of the victim "with the intent to commit an offense therein, and during the course thereof did commit a battery upon [the victim] by actually and intentionally touching or striking, or causing bodily injury to [the victim]."
The trial in this case was conducted on September 16, 1999. During the jury instruction conference, the defense counsel noted that there were two ways to commit a burglary: (1) the perpetrator enters the premises without permission with an intent to commit an offense, or (2) after a consensual entry into the premises, the perpetrator remains in the building with an intent to commit an offense. Defense counsel argued that only the first manner of committing the offense should have been charged to the jury because Tinker did not have permission to be in the victim's apartment.
The State and the trial court disagreed and, over defense counsel's objection, the jury charge included the instruction that Tinker was guilty of burglary if "[a]t the time of the entering or remaining in [the victim's home], Defendant Darren Tinker had a fully formed conscious intent to commit the offense of Battery in that structure." The instruction was improper. The court did not differentiate the two manners of committing the offense of burglary but combined them. There was no evidence that the victim ever consented to Tinker's entry into her apartment. Therefore, as correctly pointed out by the defense counsel, the "remaining in" language should not have been included in the instruction.
We note that at the time of the trial the court did not have the benefit of the supreme court decision of Delgado v. State, 776 So.2d 233, 240 (Fla.2000). However, *1200 even before the supreme court's pronouncement therein that the "remaining in" clause of the burglary statute "applies only in those situations when the remaining in was done surreptitiously," this phrase should not have been included in the jury charge where there was no consent to entry.
Where an instruction is confusing or misleading, prejudicial error occurs where the jury might reasonably have been misled and the instruction caused them to arrive at a conclusion that it otherwise would not have reached. Wadman v. State, 750 So.2d 655, 658 (Fla. 4th DCA 1999). In the present case, we cannot say beyond a reasonable doubt that the confusing and misleading instruction did not affect the jury's verdict.
Additionally, although defense counsel had raised an objection, this improper legal theory was relied upon and emphasized by the State during closing arguments, when the following statement concerning intent was made:
Whether or not the State argues to you, you may decide for yourself, well you know what, I don't think he intended to hit her. At least when he went in the window at half past midnight. He was just trying to play honey bun. We respectfully disagree.
But even if you do make that finding of fact as you only you [sic] as jurors can do, that should not prevent you from returning a guilty verdict. And why? Because you know from the evidence adduced at trial here today, that once he realized she was going for the phone, the attack followed. And that is a fully formed conscious intent to prevent her from calling the police by battering her. Let me say it again. The State doesn't concede for a moment that he did not enter there other than with the intent to do what it took, hugs and kisses and punching her. How? The way he got in there, the hour he got in there, the way he approached her, the prior trespass warning. But even if you decide as members of the jury ... that he entered or remained but he wasn't trying to get at her, by what analysis of the evidence... can you not find that he remained past that point when by her actions it was plain to him she didn't want him there?
. . . .
You may find he intended it by virtue of the entirety of the circumstances. Or you may find that fully formed intent to develop once he realized he wasn't getting it with honey.
By this argument, the State told the jury that it was not necessary that Tinker have had an intent to commit the battery when he entered the premises without the victim's consent. The State indicates that the intent to batter could have been formed while he remained in the premises and realized that the victim was not going to take him back. This argument was improper as it misstates the law. We are of the opinion that the comments deprived Tinker of a fair and impartial trial, materially contributed to the conviction, and were so harmful or fundamentally tainted as to require a new trial. See Perry v. State, 718 So.2d 1258, 1260 (Fla. 1st DCA 1998) (citing Voorhees v. State, 699 So.2d 602 (Fla.1997)).
Accordingly, due to the fact that the jury instructions were erroneous and this error was exacerbated by the improper closing arguments of the State, we reverse and remand for a new trial.
Reversed and remanded.
PATTERSON, C.J., and NORTHCUTT, J., concur.