861 So.2d 434 (2002)
Curtis FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-4334.
District Court of Appeal of Florida, First District.
June 12, 2002.
Order Granting Clarification December 24, 2003.
Nancy A. Daniels, Public Defender; M.J. Lord, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Robert L. Martin, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
On direct appeal of his burglary conviction, Curtis Foster contends that Delgado v. State, 776 So.2d 233 (Fla.2000), requires reversal. Even though the Legislature has since amended section 810.02(1), Florida Statutes (1999), we agree that Chapter 2001-58, section 1, Laws of Florida (codified at section 810.015, Fla. Stat. (2001)), does not render Delgado inapplicable. See Art. X, § 9, Fla. Const. ("Repeal or amendment of a criminal statute shall not affect prosecution or punishment for *435 any crime previously committed."). We nevertheless affirm the conviction, because a recent decision of this court forbids reversal where the defense complains on appeal for the first time of "an alleged[ly] inaccurate definition of an element of a crime." Reed v. State, 783 So.2d 1192, 1197 (Fla. 1st DCA 2001), rev. granted (Fla. Oct. 16, 2001).

I.
Early on the morning of April 22, 2000, evidence at trial showed, Angela Maxwell was inside a locked building selling gasoline and other wares, dealing with customers through a window designed for that purpose. Some time after three o'clock the store lights went off, inside and outside. When she then tried to use the telephone, it was dead, so she opened the door and yelled to a group of men standing on a nearby corner. But they ignored her.
Again inside the locked store, she heard voices outside near an air conditioning unit. Soon a bamming noise and telltale movements of the air conditioner convinced her an effort was under way to push the unit into the store and gain entrance through the opening. Exclaiming that she was going to call the police, she left the store, closed the door behind her, got into her car, drove across the street to a pay phone, and dialed 911. As she was reporting the situation, pieces of brick were thrown at her from the left side of the store.
She then drove to the police station, which was less than three minutes away, and had discussions there before eventually returning to the store, where she noticed that the door was open, and, inside, that the cash drawer was open. Officer Tolen and Sergeant Elkins had arrived on the scene before her, and had seen Mr. Foster flee from the store, cash in hand. When he ignored their orders to stop, they ran him down and arrested him.
Ms. Maxwell conceded that she did not see who was trying to break into the store, but testified that she never gave Mr. Foster permission to enter the store. Mr. Foster testified that, seeing the store dark and the door open, he went in, partly out of curiosity and partly in order to buy cigarettes, only to find money on the floor, which he picked up and took with him as he made his hasty exit. He testified that he had no intention to commit any crime at the time he entered the store. He kept going when he heard someone yell, "Hold it," he testified, because he thought burglars, not law enforcement officers, were ordering him to stop.
In closing, the state argued that, even if the jury believed Mr. Foster's version of events, they should still find him guilty of burglary because he remained inside the structure after forming the intent to commit theft by taking money that was not his:
If the defendant entered into the structure and while in the structure while remaining in that structure formed the intent to commit a theft then that is a burglary.
He does not have to form the intent before he enters into the structure. Before he commits the entrance. It's enter or remain. Once he went into that structure he had no lawful authority to enter that structure while he was inside of that structure he formed the conscious intent to commit that theft while he remained in that structure.
The trial court gave the standard jury instructions on burglary, which defined the elements of the charged offense in the following words:
One, Curtis Foster entered or remained in a structure owned by or in possession of Baron Oil gas station. Two, Curtis *436 Foster did not have the permission or consent of Baron Oil gas station or any one authorized to act for them to enter or remain in the structure at that time. And three, at the time of entering or remaining in the structure Curtis Foster had a fully formed conscious intent to commit the offense of theft while in that structure.
(Emphasis supplied.) See § 810.02(1), Fla. Stat. (1999); Fla. Std. Jury Instr. (Crim.) 195. These instructions did not require the jury to find that Mr. Foster formed the intent to commit theft either before entering or while surreptitiously remaining in the structure.

II.
The difference between "remaining" and "remaining surreptitiously" took on legal significance under the burglary statute with our supreme court's decision in Delgado. The supreme court held in Delgado that "the `remaining in' clause should be limited to the defendant who surreptitiously remains." 776 So.2d at 240; see Tinker v. State, 784 So.2d 1198, 1200 (Fla. 2d DCA 2001); Valentine v. State, 774 So.2d 934, 937 (Fla. 5th DCA 2001). Abandoning its earlier interpretation of the statute,[1] the supreme court concluded in Delgado that the Legislature had not intended to define burglary in a way that included cases where a defendant who did not intend to commit an offense upon entering a structure did not, having formed such an intent once inside, thereafter "remain in" the structure surreptitiously. The Delgado court held that a person does not "remain in" a structure for purposes of the burglary statute, section 810.02(1), Florida Statutes (1989), unless the person remains inside surreptitiously. See 776 So.2d at 240.
The final Delgado opinion superseded and was "substituted in lieu" of the original opinion in Delgado, which had come down on February 3, 2000, see 25 Fla. L. Weekly S79, announcing the change in law before the events which gave rise to the present case took place. Only on August 24, 2000, however, after the alleged burglary, did the final opinion, reported at 776 So.2d at 234 and 776 So.2d 233, come down. The final Delgado opinion addressed the question of retroactivity for the first time, saying: "This opinion will not ... apply retroactively to convictions that have become final." 776 So.2d at 241 (emphasis supplied). As we understand Delgado itself to say, therefore, an offender whose conviction was final before August 24, 2000, does not have the benefit of Delgado's interpretation of the burglary statute, even if his offense occurred after February 3, 2000, when the initial Delgado decision came down.[2] In the present case, *437 however, although the events which gave rise to the prosecution occurred before the final opinion and the mandate issued in Delgado, the conviction under review was not final until after August 24, 2000.

III.
Appellant argues that his burglary conviction should be reversed because the jury might have convicted him on the theory that he remained in the store, having decided to take the money, despite concluding that he did not remain in the store surreptitiously. A conviction that rests on alternative bases, one of which is legally inadequate, cannot be upheld, if a general verdict makes it impossible to say with certainty that the jury convicted under a theory that was legally adequate. See Mackerley v. State, 777 So.2d 969, 969 (Fla.2001) (holding error is not harmless, when the accused is convicted of first-degree murder on a general verdict after a trial in which premeditation and felony murder theories are espoused, if "the felony underlying the felony murder charge is based on a legally unsupportable theory"). Basic requirements of due process require this rule, which finds support in the due process clauses both of the Florida and of the federal constitutions. See U.S. Const. amend. V; Art. I, § 9, Fla. Const. See generally Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled in part on other grounds, Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
Until Reed was decided, when a jury, instructed that it could convict for conduct that did not constitute an offense (or constituted some lesser offense), returned a general verdict, the conviction amounted to fundamental error, notwithstanding the existence of alternative, legitimate theories of guilt the evidence could support. See Mosely v. State, 682 So.2d 605, 607 (Fla. 1st DCA 1996); Arline v. State, 550 So.2d 1180, 1181 (Fla. 1st DCA 1989); see also Horn v. State, 677 So.2d 320, 323 (Fla. 1st DCA 1996) (holding enhancement on a general verdict for felony murder impermissible on account of possession of a firearm, because possession of a firearm was an essential element of one (but not all) of the predicate felonies the state relied on to prove felony murder).
The United States Supreme Court has held "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." Yates, 354 U.S. at 312, 77 S.Ct. *438 1064; see generally Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (explaining that reversal is not required under Yates so long as the evidence is sufficient under one alternative ground, if and only if each alternative ground is legally adequate); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Here the jury was instructed that Mr. Foster was guilty of burglary if he "remained in the structure... with the intent to commit an offense therein." The jury was not instructed that he was not guilty if he had entered without the intent to commit an offense and had not remained surreptitiously. The jury instructions permitted the jury to find him guilty even if, as argued by the state, he had not formed an intent to steal the money before entering the store, and even if he did not remain in the store surreptitiously. See Lopez v. State, 805 So.2d 41, 42 (Fla. 4th DCA 2001); Valentine, 774 So.2d at 937; Mosely, 682 So.2d at 606; Arline, 550 So.2d at 1181.

IV.
In the legislative session after Delgado was decided, the Legislature enacted Chapter 2001-58, section 1, at 404, Laws of Florida, which took effect May 25, 2001. Chapter 2001-58, section 1, provides:
810.015 Legislative findings and intent; burglary.
(1) The Legislature finds that the case of Delgado v. State, Slip Opinion No. SC88638 [, 776 So.2d 233] (Fla.2000) was decided contrary to legislative intent and the case law of this state relating to burglary prior to Delgado v. State. The Legislature finds that in order for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously.
(2) It is the intent of the Legislature that the holding in Delgado v. State, Slip Opinion No. SC88638 [, 776 So.2d 233] be nullified. It is further the intent of the Legislature that s. 810.02(1)(a) be construed in conformity with Raleigh v. State, 705 So.2d 1324 (Fla.1997); Jimenez v. State, 703 So.2d 437 (Fla.1997); Robertson v. State, 699 So.2d 1343 (Fla. 1997); Routly v. State, 440 So.2d 1257 (Fla.1983); and Ray v. State, 522 So.2d 963 (Fla. 3rd DCA, 1988). This subsection shall operate retroactively to February 1, 2000.[3]
(3) It is further the intent of the Legislature that consent remain an affirmative defense to burglary and that the lack of consent may be proven by circumstantial evidence.
*439 Portions of the legislative history of Chapter 2001-58, section 1, Laws of Florida, also speak to legislative intent:
House Bill 953 clearly rejects the construction of the statute placed on it as a result of the Delgado opinion, and reasserts the seventeen year case precedent with respect to "remaining in" burglaries. Insofar as burglaries committed on or before July 1, 2001, the bill is a legislative restoration of the law of "remaining in" burglaries to what it was prior to the Delgado opinion. The purpose of this provision is to "resettle" the law with respect to pending burglaries and leave them undisturbed by the Delgado decision.
Fla. H.R. Comm. on Crime Prevention, Corrs., & Safety, HB 953 (2001) (enacted as Ch.2001-58, Laws of Fla.) Final Staff Analysis 4 (June 26, 2001). The statute had not been enacted at the time of appellant's trial, September 18, 2000, or at the time of his sentencing, October 4, 2000.

V.
The Florida Supreme Court has suggested that Chapter 2001 58, section 1, Laws of Florida can be viewed as clarifying[4] the legislative intent that originally animated the burglary statute. See Jimenez v. State, 810 So.2d 511, 512 (Fla.2001) (noting that "in its most recent session, the Legislature declared that Delgado was decided contrary to legislative intent and that this Court's interpretation of the burglary statute in Jimenez's direct appeal was in harmony with legislative intent"). The plain language of Chapter 2001-58, section 1, Laws of Florida, supports this view. But our supreme court has not overruled Delgado.

VI.
Special care must be exercised in interpreting criminal statutes where subsequently enacted legislation is considered, because the Florida Constitution[5] restricts legislative power by forbidding statutes *440 that authorize sanctions, and proscribing the application of later enacted statutes that "affect prosecution," for conduct that has already occurred. See Art. X, § 9, Fla. Const. ("Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed."); State v. Smith, 547 So.2d 613, 616 (Fla.1989); Booker v. State, 514 So.2d 1079, 1082-83 (Fla.1987); State v. Eldredge, 801 So.2d 965, 966 (Fla. 4th DCA 2001); Rock v. State, 800 So.2d 298, 299 (Fla. 3d DCA 2001); State v. Miranda, 793 So.2d 1042, 1044 (Fla. 3d DCA 2001); Heath v. State, 532 So.2d 9, 10 (Fla. 1st DCA 1988). See also Fla. Const., Art. I, § 10 ("No ... ex post facto law ... shall be passed."). These constitutional restrictions[6] on retrospective criminal statutes apply with full force to legislation explicitly purporting to nullify a judicial decision that has given a criminal statute a definitive gloss. See Smith, 547 So.2d at 616-17.
Pertinent in the present case is the state constitutional prohibition against applying a subsequently enacted statute in a way that "affect[s] prosecution ... for any crime previously committed." Art. X, § 9., Fla. Const. Under Article X, section 9, the "repeal or amendment of any criminal statute does not affect the prosecution or punishment for any crime previously committed." 15A Fla. Jur.2d Criminal Law § 2970 (2001).
The effect of this constitutional provision is to give to all criminal legislation a prospective effectiveness; that is to say, the repeal or amendment, by subsequent legislation, of a pre-existing criminal statute does not become effective, either as a repeal or as an amendment of such pre-existing statute, in so far as offenses are concerned that have been already committed prior to the taking effect of such repealing or amending law.
Raines v. State, 42 Fla. 141, 28 So. 57, 58 (1900).See Plummer v. State, 83 Fla. 689, 92 So. 222, 223 (1922) (dicta); Bradley v. State, 385 So.2d 1122, 1123 (Fla. 1st DCA 1980); State v. Pizarro, 383 So.2d 762, 763 (Fla. 4th DCA 1980) ("In fact, retroactive application of an amended or repealed statute affecting prosecution or punishment is unconstitutional. Article X, Section 9, Florida Constitution.").
In deciding Delgado as it did, the Supreme Court of Florida unambiguously rejected its prior interpretation of section 810.02(1). See 776 So.2d at 241 ("[T]oday, we recede from this Court's previous opinions in Robertson, Jimenez, and Raleigh, a decision which we do not undertake lightly.") *441 "Although legislative amendment of a statute may change the law so that prior judicial decisions are no longer controlling, it does not follow that court decisions interpreting a statute are rendered inapplicable by a subsequent amendment to the statute." Smith, 547 So.2d at 616 (quoting Heath, 532 So.2d at 10).
In Heath, this court recited the following principles: (1) it is the judiciary's function to declare what the law is, thus court decisions interpreting a statute are not necessarily rendered inapplicable by a subsequent amendment, but must be examined in light of a statutory amendment "to determine what law may be applicable after the amendment;" (2) the statutes in effect at the time of commission of a crime control both the offenses for which a perpetrator can be convicted and the punishments which may be imposed....
Payne v. State, 538 So.2d 1302, 1303 (Fla. 1st DCA 1989). By the time appellant stood trial, the Delgado court's new, definitive construction of section 810.02(1) was binding. The offense allegedly occurred before Chapter 2001-58, section 1, Laws of Florida, took effect. By the time Chapter 2001-58 was enacted, the Delgado court had already announced the controlling construction of section 810.02(1), Florida Statutes (1989), as to all cases not yet final as of August 24, 2000. The Legislature was powerless to alter the chronology of these historical facts or to blink their constitutional significance.

VII.
The trial court should, therefore, have instructed the jury in accordance with Delgado. Instead, the standard jury instruction Delgado had ruled inadequate was given. But trial counsel did not request an alternative instruction, stated no objection to the instruction that was given, and did not move for judgment of acquittal on grounds that the verdict might reflect jury findings of fact that did not amount to burglary. Solely on the narrow ground of non-preservationand only because we are so constrained by the decision in Reed.[7] now pending review in our supreme courtdo we affirm appellant's conviction.
Affirmed.
BARFIELD, J., CONCURS; ERVIN, J., CONCURS WITH OPINION.
ERVIN, J., concurring.
Although I agree with the majority's decision to affirm, I see no need to apply the extended analysis to the issue as undertaken by the majority. After the publication on August 24, 2000, of the final Delgado opinion (Delgado v. State, 776 So.2d 233 (Fla.2000)), the Florida Legislature enacted section 810.015, Florida Statutes (2001), which includes the legislative finding that the supreme court in Delgado had interpreted the burglary statute, section 810.021(1), Florida Statutes (1989), in a manner contrary to legislative intent and therefore the Delgado holding should be nullified. Ordinarily an amendment which does not create a substantive change in the law, but serves only to clarify the legislative intent, as reflected in the opinions preceding Delgado that were recited in section 810.015(2), does not violate the constitutional prohibition against ex post facto laws. See State v. Cotton, 769 So.2d 345 (Fla.2000); Barns v. State, 768 So.2d 529 (Fla. 4th DCA 2000), review dismissed, 796 So.2d 535 (Fla.2001); State v. Nuckolls, 606 So.2d 1205 (Fla. 5th DCA 1992).
It appears to me that the above rule is particularly applicable to a situation, such *442 as that before us, in which the amendment was enacted shortly after the controversy arose over the interpretation of the statute; thereby permitting a court to consider the amendment as simply a legislative interpretation of the original law. See Lowry v. Parole & Probation Comm'n, 473 So.2d 1248 (Fla.1985); Cotton.
In fact, following its decision in Delgado, and the legislative enactment, the Florida Supreme Court recognized the above rule by refusing post-conviction relief under Delgado to a death-row inmate in Jimenez v. State, 810 So.2d 511 (Fla.2001). In addition to reiterating that Delgado was not subject to retroactive application, the court continued with the following pertinent observations:
Moreover, in its most recent session, the Legislature declared that Delgado was decided contrary to legislative intent and that this Court's interpretation of the burglary statute in Jimenez's direct appeal was in harmony with legislative intent.
Id. at 512 (citation omitted).
The majority, like the Third District Court of Appeal in Ruiz v. State, 841 So.2d 468 (Fla. 3d DCA 2002) (on reh'g), and Braggs v. State, 815 So.2d 657 (Fla. 3d DCA 2002) (en banc), refuses to apply the above language to this appeal because the supreme court in Jimenez did not expressly overrule Delgado. See ante at 439. I am of the firm belief that such a conclusion is a mere quibbling over words. I would adopt in their entirety the following statements by Judge Green in her dissenting opinion in Braggs:
[T]he language quoted from Jimenez was clearly an additional reason offered by the court as to why Jimenez was not entitled to post-conviction relief; and not, as my colleagues in the majority suggest, a discussion of why the Delgado decision had not met the test for retroactivity.... Given the Supreme Court's clear acknowledgment that Delgado was decided contrary to legislative intent, I simply do not understand how the majority remains in a quandary about whether Delgado remains good law.... I believe that the appellant's conviction for burglary with an assault should be affirmed based upon the court's pronouncement in Jimenez. Although, the Supreme Court did not expressly state in Jimenez that it was receding from Delgado, it is quite clear that is what it did. For that reason, it is unnecessary for us to continue to blindly adhere to Delgado.

Braggs, 815 So.2d at 664 (Green, J., dissenting).
To conclude, I agree that appellant's conviction for burglary should be affirmed, but for substantially different reasons from those expressed by the majority.

ON MOTION FOR REHEARING
PER CURIAM.
Appellant's motion for rehearing alleges that he is entitled to a reversal of his conviction on account of the decision in Reed v. State, 837 So.2d 366 (Fla.2002), which came down after we originally decided his case. See Foster v. State, 861 So.2d 434, 2002 WL 1285453 (Fla. 1st DCA, June 12, 2002). As we made clear in our original opinion, "[s]olely on the narrow ground of non-preservationand only because we [we]re so constrained by the decision in Reed [v. State, 783 So.2d 1192 (Fla. 1st DCA 2001)], [then] pending review in our supreme courtd[id] we affirm appellant's conviction." Foster, 861 So.2d at 441 (footnote omitted).
In subsequently quashing the decision by which we were then constrained, our supreme court held that misstating an element *443 of an offense in instructing the juryeven in accordance with an often used standard jury instructionconstituted fundamental error requiring reversal without regard to the usual rules of preservation because "the inaccurate definition of malice [the element at issue in Reed] reduced the State's burden of proof" on a disputed element. Reed, 837 So.2d at 369. In the present case, too, the jury instructions contained an inaccurate and incomplete definition of a disputed element of the offense, which requires reversal for a new trial. See Fitzpatrick v. State, 859 So.2d 486 (Fla.2003).
We certify the following question as a question of great public importance.
HAS SECTION ONE OF CHAPTER 2001-58, LAWS OF FLORIDA, LEGISLATIVELY OVERRULED DELGADO v. STATE, 776 So.2d 233 (Fla.2000), AS TO CASES NOT FINAL AT THE TIME OF SUCH DECISION IN WHICH THE OFFENSES WERE COMMITTED ON OR AFTER FEBRUARY 1, 2000, THEREBY PERMITTING A TRIAL COURT TO INSTRUCT A JURY THAT IT MAY FIND A DEFENDANT GUILTY OF BURGLARY, DESPITE EVIDENCE SHOWING A LEGAL ENTRY INTO THE PREMISES AND THAT AN OFFENSE WAS COMMITTED THEREIN WHILE THE DEFENDANT REMAINED WITHIN NON-SURREPTITIOUSLY?
Reversed and remanded.
ERVIN, BARFIELD, and BENTON, JJ., concur. ERVIN, J., concurs specially with a written opinion. BARFIELD, J., concurs specially with a written opinion.
ERVIN, J., concurring.
The question certified by this court asks the Florida Supreme Court to decide an issue which the court alluded to, but did not decide, in Floyd v. State, 850 So.2d 383 (Fla.2002). In Floyd, one of the questions raised was whether the trial court fundamentally erred in instructing the jury that it could find the defendant guilty of armed burglary if, at the time he remained inside a residence, he had formed the intent to commit an offense, when there had been no showing that the "remaining in" was accomplished surreptitiously. Relying on the Fifth District's analysis in Valentine v. State, 774 So.2d 934 (Fla. 5th DCA 2001), the supreme court concluded that the giving of the instruction was fundamental error, requiring reversal of the conviction for armed burglary. Floyd, 850 So.2d at 401-02.
The offense in Floyd occurred in 1998, well before February 1, 2000, the date the legislature, in section 810.015(2), Florida Statutes (2001), declared the supreme court's decision in Delgado v. State, 776 So.2d 233 (Fla.2000), to be contrary to legislative intent and therefore null. In deciding the case as it had, the supreme court added the following important footnote to its opinion:
We are aware that in enacting section 810.015(2), Florida Statutes (2001), the Legislature stated its intent "that the holding in Delgado v. State ... be nullified." However, the Legislature also stated that subsection (2) of § 810.015 would "operate retroactively to February 1, 2000." The events in Floyd's case occurred well before February 1, 2000. Therefore, because the events in Floyd's case do not fall within the window established by the Legislature for retroactive application of section 810.015(2), we need not address the issue of the retroactive effect of the statute. See R.C. v. State, 793 So.2d 1078, 1079 n. 1 (Fla. 2d DCA 2001) (reversing defendant's conviction for burglary of a dwelling, based on *444 Delgado v. State, and noting that the Legislature's language in section 810.015(2) regarding the nullification of Delgado did not apply because the defendant's actions took place prior to February 1, 2000).
Floyd, 850 So.2d at 402 n. 29. In the case at bar, Foster was convicted of a burglary committed on April 22, 2000.
The supreme court recently made clear what it had intimated in Floyd, i.e., that the legislative amendment had no applicability to alleged burglarious conduct committed before February 1, 2000, but it again left open the question whether conduct that occurred thereafter was so affected. See State v. Ruiz, 863 So.2d 1205, 2003 WL 22964652 (Fla. Dec. 18, 2003). I find it interesting that in so deciding, the court declined to reach the question actually certified to it by the Third District, which asked whether the amendment had overruled Delgado as to crimes committed on or before July 1, 2001,[1] but rephrased it to ask whether the amendment applied to such conduct that occurred prior to February 1, 2000. As a result of the court's decision in Ruiz, one can appropriately conclude the following: That in regard to alleged burglarious acts occurring before February 1, 2000, the court will rule the nullification amendment inapplicable. As to conduct occurring thereafter, how the court will construe the statute is less clear. It is possible that the court will defer to the legislative will and hold that Delgado has no continuing efficacy. On the other hand, the court could decide that because the amendment is a penal statute and no notice was provided the public of the legislative intent until the effective date of the statute, which took place on May 25, 2001,[2] the amendment is applicable only as to conduct transpiring after said date.
I question whether the decision Judges Benton and Barfield rely on, Fitzpatrick v. State, 859 So.2d 486 (Fla.2003), requires reversal and remand. In Fitzpatrick, the crime occurred on February 8, 1980, also before the effective date of the amendment to section 810.015(2). Fitzpatrick is consistent with Delgado, wherein the court limited its application to pending cases but not to cases that had become final before its original decision on February 3, 2000. Delgado, 776 So.2d at 241. See also Jimenez v. State, 810 So.2d 511 (Fla.2001). Fitzpatrick clearly did not address the question left unanswered in Floyd and Ruiz as to whether the nullification amendment applied to a defendant who committed burglary after February 1, 2000, as was charged against appellant Foster.
In deciding Delgado, the court based its limiting construction of the burglary statute upon what it perceived to be the legislative intent, rather than any constitutional provision. See Delgado, 776 So.2d at 241 n. 7; Jimenez, 810 So.2d at 512-13 (observing that Delgado need not be given retroactive application, because the decision is not constitutional in nature nor does it have fundamental significance). Because Delgado is based purely on the court's interpretation of the statute, I would ordinarily have considered that the nullification amendment, enacted during the year following the decision, should have ended any controversy over the legislature's intent in adding the "remaining in" *445 language to the burglary statute. It has long been recognized that when "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof." Lowry v. Parole & Prob. Comm'n, 473 So.2d 1248, 1250 (Fla.1985). See, e.g., Barns v. State, 768 So.2d 529, 530-33 (Fla. 4th DCA 2000); Matthews v. State, 760 So.2d 1148, 1150 (Fla. 5th DCA 2000); State v. Nuckolls, 606 So.2d 1205, 1207 (Fla. 5th DCA 1992). Consequently, such laws do not violate the constitutional prohibition against ex post facto laws. See Skeens v. State, 556 So.2d 1113 (Fla.1990).
Because of the uncertainty attending the application of the legislative amendment to cases pending at the time the amendment took effect on May 25, 2001,[3] such as that at bar, I concur in the result, albeit reluctantly.
BARFIELD, J., concurring.
In concurring with the court's opinion, I recognize that there remains open the question of whether this crime committed before Delgado v. State, 776 So.2d 233 (Fla.2000) became final, tried after Delgado became final, but not yet final when the legislature made Chapter 2001-58, section 1, Laws of Florida, effective retroactively to a date preceding the date the crime was committed, is controlled by Delgado. To conclude that Delgado does not control this case would attribute to the legislature the same incongruity toward defendants that the supreme court has evidenced in its opinions.
It is apparent to me that the legislature, in setting a retroactive date of February 1, 2000, intended to reject the Delgado decision as inconsistent with long-standing legislative intent that had been understood by the courts for years until the Delgado decision. It did not intend to differentiate between crimes committed before February 1, 2000, and those committed on or after that date. The legislature would have been better served had it omitted a specific retroactive date and simply said that the Delgado decision was wrong.
Given this view of Chapter 2001-58, section 1, Laws of Florida, it is my opinion that Fitzpatrick v. State, 859 So.2d 486 (Fla.2003), leaves us no alternative but to reverse.
NOTES
[1] The change wrought by Delgado took effect (both prospectively and, as to pipeline cases, retrospectively) when the final opinion in Delgado came down, after the burglary alleged in the present case transpired, but before trial.
[2] Our conclusion in this regard finds support in the decision in Henderson v. State, 698 So.2d 1205 (Fla.1997), where the supreme court accepted jurisdiction to answer this certified question:

DOES THE DECISION IN CONEY v. STATE, 653 So.2d 1009 (Fla.), cert. denied, [516] U.S. [921], 116 S.Ct. 315, 133 L.Ed.2d 218 (1995) APPLY TO CASES IN WHICH THE JURY SELECTION PROCESS TOOK PLACE AND THE ENTIRE TRIAL CONCLUDED DURING THE PERIOD OF TIME AFTER THE ISSUANCE OF THE CONEY OPINION BUT PRIOR TO THE TIME THAT CONEY BECAME FINAL BY THE DISPOSITION OF ALL MOTIONS FOR REHEARING DIRECTED TO THAT OPINION?
Even though the Coney opinion had not changed on rehearing, the court held: "When we state that a ruling is prospective only, the ruling does not take effect until the time for rehearing has run." 698 So.2d at 1205. But see Scarpillo v. State, 576 So.2d 377, 378 (Fla. 4th DCA 1991).
Our supreme court decided, in Dixon v. State, 730 So.2d 265 (Fla.1999), that the effective date of State v. Callaway, 658 So.2d 983 (Fla.1995), was the date the mandate issued there, answering affirmatively this question:
WHETHER A DEFENDANT'S RULE 3.850 MOTION SEEKING THE RETROACTIVE APPLICATION OF HALE [v. STATE, 630 So.2d 521 (Fla.1993)] WAS TIMELY WHEN FILED WITHIN TWO YEARS FROM THE DATE THE MANDATE ISSUED IN THIS COURT'S OPINION IN CALLAWAY, WHICH ANNOUNCED THE RETROACTIVITY OF HALE.
730 So.2d at 265-66. In the present case, August 24, 2000 was "the date of our [supreme court's] decision announcing retroactivity," id. at 267, and therefore, by analogy to Dixon, the effective date of the change in law.
The opinion in Brown v. State, 719 So.2d 882, 884 n. 1 (Fla.1998) specifies that the change in law at issue there "will have no retroactive application to cases final as of the date this opinion is released," rather than referencing the court's mandate. But there the sole opinion issued in the case dealt with retroactivity. Similarly, in State v. Barquet, 262 So.2d 431, 438 (Fla.1972), the supreme court made "the filing date of this opinion" dispositive, rather than the date the court's mandate issued.
[3] The events that gave rise to Mr. Foster's conviction occurred after February 1, 2000. Cf. Otero v. State, 807 So.2d 666, 667 & n. 4 (Fla. 4th DCA 2001); Schrack v. State, 793 So.2d 1102, 1103 n. 1 (Fla. 4th DCA 2001) ("During the pendency of this appeal, the Legislature expressly nullified Delgado. This nullification, however, [purportedly] operates retroactively to February 1, 2000. Because the events herein occurred prior to that date, we do not discuss this enactment." (citations omitted)); R.C. v. State, 793 So.2d 1078, 1079 n. 1 (Fla. 2d DCA 2001) ("Section 810.015, Florida Statutes (2001), nullifies Delgado v. State, 776 So.2d 233. Although that nullification [purportedly] operates retroactively, the legislature limited that retroactivity to February 1, 2000. The instant events took place prior thereto."); Ruiz v. State, 789 So.2d 1108, 1108 n. 1 (Fla. 3d DCA 2001) ("We are aware of the creation of section 810.015, Florida Statutes (2001) expressing the legislature's finding that Delgado v. State was decided contrary to legislative intent, and setting forth the intent to nullify Delgado. Although the legislature provided that the nullification operates retroactively, it limited that retroactivity to February 1, 2000. The instant events took place prior thereto."); Tinker v. State, 784 So.2d 1198, 1199-1200 (Fla. 2d DCA 2001).
[4] That courts may, as a general proposition, consider subsequent clarifying legislation in interpreting statutes is clear. See Bell v. New Jersey, 461 U.S. 773, 784, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) ("Of course, the view of a later Congress does not establish definitively the meaning of an earlier enactment, but it does have persuasive value."); Parker v. State, 406 So.2d 1089, 1092 (Fla.1981); Burgos v. State, 765 So.2d 967, 968 (Fla. 4th DCA 2000); Gamble v. State, 723 So.2d 905, 907 (Fla. 5th DCA 1999); State v. Williams, 417 So.2d 755, 758 (Fla. 5th DCA 1982). A court may, indeed, have a duty to look to subsequent legislation in order to ascertain the correct meaning of a statute. See Barns v. State, 768 So.2d 529, 533 (Fla. 4th DCA 2000) (construing statute that "limited the trial court's discretion on bond issues"); Gamble, 723 So.2d at 906. Our supreme court has also said that when "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof." Lowry v. Parole and Prob. Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (construing statute that "clarified the manner in which presumptive parole release dates [were] calculated"); see Barns, 768 So.2d at 530-33; Matthews v. State, 760 So.2d 1148, 1150 (Fla. 5th DCA 2000); State v. Nuckolls, 606 So.2d 1205, 1207 (Fla. 5th DCA 1992). But see State v. Eldredge, 801 So.2d 965, 966 (Fla. 4th DCA 2001) (rejecting contention that amendments to a criminal statute "merely `clarified' existing law, and should therefore be applied retroactively"); Rock v. State, 800 So.2d 298, 299 (Fla. 3d DCA 2001); State v. Miranda, 793 So.2d 1042, 1044 (Fla. 3d DCA 2001) (same).

The prospective effect of Chapter 2001-58, section 1, Laws of Florida is not at issue in the present case.
[5] The federal constitution also forbids ex post facto legislation. See Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) ("The Ex Post Facto Clause, by its own terms, does not apply to courts." 121 S.Ct. at 1699).
[6] The substance of the current Article X, section 9 dates to the 1885 Constitution: "The repeal or amendment of any Criminal Statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment." Art. III, § 32, Fla. Const. (1885). See generally Ex Parte Pells, 28 Fla. 67, 9 So. 833, 834-35 (1891); Higginbotham v. State, 19 Fla. 557, 559-60 (1882).

The substance of the current Article I, section 10 dates to the 1838 Constitution: "That retrospective laws, punishing acts committed before the existence of such laws, and by them only declared penal, or criminal, are oppressive, unjust, and incompatible with liberty; wherefore, no ex post facto law shall ever be made." Art. I, § 18, Fla. Const. (1838). See also Declaration of Rights, § 16, Fla. Const. (1868) ("No ... Ex post facto law... shall ever be passed.").
The supreme court's decisions collected in footnote 1 seem to require the conclusion that the alleged offense antedated the effective date of the decision in Delgado, even though the initial opinion came down before the alleged offense occurred. Today's decision is fully supportable, however, on the authority of Article X, section 9 of the Florida Constitution. See Bates v. State, 750 So.2d 6, 19 (Fla.1999) (Harding, C.J., concurring) (noting that Article X, section 9 of the Florida Constitution applies even where "ex post facto protections are not implicated").
[7] Inasmuch as the prosecutor argued in closing that the jury could convict on the very theory that Delgado disallowed, we could not find the error harmless, if preserved.
[1] In section 810.02(1)(b), Florida Statutes (2002), the legislature specified that its new definition of burglary, providing that the offense can be accomplished by remaining within a dwelling, structure or conveyance after permission to remain within has been withdrawn, applied to offenses committed after July 1, 2001.
[2] See Ch.2001-58, § 4, at 406, Laws of Fla.
[3] Ch.2001-58, § 4, at 406, Laws of Fla.