# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-502
_____

DAVID LEE HUCKABA,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Columbia County.
Wesley R. Douglas, Judge.

November 20, 2018

B.L. THOMAS, C.J.

   Appellant challenges his convictions and sentences for vehicular homicide and reckless driving causing serious bodily injury, raising the following issues on appeal: 1) the charging instrument and jury instructions were fundamentally defective, as they were based on an incorrect version of the vehicular homicide statute; 2) the trial court failed to order a competency evaluation; 3) Appellant received ineffective assistance of counsel; 4) prosecutorial comments about alcohol consumption entitle Appellant to a new trial; and 5) the common law "born-alive" rule precludes one of Appellant's convictions.

   As to Appellant's second, fourth, and fifth issues on appeal, we reject Appellant's arguments without discussion. For the reasons set forth below, we also reject Appellant's arguments presented in the first and third issues raised on appeal.

*Facts*

In December 2014, Appellant was charged by information with three counts of vehicular homicide, three counts of reckless driving causing serious bodily injury, and one count of reckless driving causing injury, plus several counts based on driving under the influence of alcohol. All charges arose from a 2013 multi-car collision that resulted in the deaths of Kenneth Pelletier, Jennifer Duncan, and her unborn child ("Baby Boy Duncan").

In the original 2014 information, Count 6, alleging vehicular homicide, read:

> . . . [Appellant] . . . by the operation of a motor vehicle in a reckless manner likely to cause death or great bodily harm to another, did then and there unlawfully kill a *viable fetus*, to wit: BABY BOY DUNCAN, by injury to the mother, JENNIFER DUNCAN, contrary to Florida Statute 782.071(1).

(Emphasis added).

In October 2016, the State amended the information, removing all counts for driving under the influence, and charging Appellant with three counts of vehicular homicide (Counts 1-3) and one count of reckless driving causing serious bodily injury (Count 4). In the amended information, Count 3 read:

> . . . [Appellant] . . . by the operation of a motor vehicle in a reckless manner likely to cause death or great bodily harm to another, did then and there unlawfully kill an *unborn child*, to wit: BABY BOY DUNCAN, by injury to the mother, JENNIFER DUNCAN, contrary to Florida Statute 782.071(1).

(Emphasis added).

The "viable fetus" language is consistent with the 2013 version of Florida's vehicular homicide statute, whereas the "unborn child" language in the amended information tracks the 2014 version. *Compare* § 782.071, Fla. Stat. (2013) (amended 2014), *with* § 782.071, Fla. Stat. (2014). Significantly, both

2

charging instruments alleged that Appellant's conduct was "contrary to Florida Statute 782.071(1)."

During the State's case-in-chief, eyewitnesses and law enforcement officers testified that Appellant was driving uphill and passing several vehicles in a no-passing zone while traveling in the lane of oncoming traffic at a speed of up to 90 miles per hour. One witness testified that Appellant made an obscene gesture as he sped past. When Appellant reached the top of the hill, he swerved back into his correct lane to avoid an approaching vehicle, but hit the victim's car, sending it careening into oncoming traffic, at which point the victims' car was hit by the approaching vehicle. The victims were ejected and the driver of the approaching car that hit the victims was seriously injured.

The State called Dr. Aurelian Nicolaescu, a medical examiner, who testified that the fatal injuries sustained by Mr. Pelletier and Ms. Duncan were consistent with a crash and ejection. Dr. Nicolaescu testified that Baby Boy Duncan suffered blunt trauma to multiple body parts, with the cause of death being "intrauterine demise because the baby died in the uterus due to multiple blunt trauma due to maternal multiple injuries." He testified that the estimated gestational age was 26 to 28 weeks, based on the weight of 900 grams. The State then entered a photograph of Baby Boy Duncan taken after delivery as part of the medical examination. Defense counsel did not object to any of this evidence, and did not cross-examine Dr. Nicolaescu.

The State called Lisa Montgomery, a forensic toxicologist, who testified that Appellant had a blood alcohol level of 0.045 after the crash. She testified that, although this was below the limit for intoxication, it would lead to difficulty in making rational decisions and an increase in risky behavior.

After the State rested, defense counsel moved for a judgment of acquittal, stating, "Your Honor, the defense would move for judgment of acquittal and make no argument." The trial court denied the motion.

At the charge conference, defense counsel accepted a jury instruction that the elements of vehicular homicide included the killing of an unborn child, and defining unborn child as a human

3

carried in the womb, at any stage of development. Defense counsel requested definitions for willful and wanton to be added to the vehicular homicide instruction, and the prosecutor agreed to add those definitions "right under the unborn child" language.

During closing argument, the prosecutor stated that vehicular homicide included killing an "unborn child." The prosecutor also commented that Appellant was driving with "liquid courage," and had "alcohol coursing through his veins." Defense counsel made no objections during the State's closing argument. In Appellant's closing argument, defense counsel argued that Appellant was not reckless, and made no mention of viability.

After closing arguments, the trial court instructed the jury:

> To prove the crime of vehicular homicide, the State must prove the following three elements beyond a reasonable doubt:
>
> One. A, the victim is dead.
>
> Or, B, an unborn child is dead by injury to the mother.
>
> Two, the death was caused by the operation of a motor vehicle by the defendant.
>
> Three, the defendant operated the motor vehicle in a reckless manner likely to cause the death of or great bodily harm to another person.
>
> . . . .
>
> An unborn child means a member of the species, *homo sapiens*, at any stage of development, who is carried in the womb.

The jury found Appellant guilty as charged on all counts. Appellant was sentenced to 363.98 months in prison on Counts 1-3, plus five years on Count 4 to run concurrently with Counts 1-3.

*Analysis*

*I.*

"[I]t is firmly established law that the statutes in effect at the time of commission of a crime control as to the offenses for which the perpetrator can be convicted . . . ." *Heath v. State*, 532 So. 2d 9, 10 (Fla. 1st DCA 1988).

The 2014 version of Florida's vehicular homicide statute defines vehicular homicide as "the killing of a human being, or the killing of an unborn child by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." § 782.071, Fla. Stat. (2014). The statute provides that "the term 'unborn child' means a member of the species *Homo sapiens*, at any stage of development, who is carried in the womb." § 775.021(5)(e), Fla. Stat. (2014).

By contrast, the 2013 version of the same statute defined vehicular homicide as "the killing of a human being, or the killing of a *viable fetus* by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." § 782.071, Fla. Stat. (2013) (amended 2014) (emphasis added). The legislation provided that "a fetus is viable when it becomes capable of meaningful life outside the womb through standard medical measures." § 782.071(2), Fla. Stat. (2013) (amended 2014).

The 2013 version of the vehicular homicide statute applied on the date of Appellant's crimes. § 782.071(2), Fla. Stat. (2013); *Heath*, 532 So. 2d at 10. The amended information, however, charged Appellant with killing an *unborn child*, rather than a viable fetus. Likewise, the trial court instructed the jury on the unborn-child requirement, along with an instruction that unborn child meant a child carried in the womb "at any stage of development." Thus, the charging instrument and jury instructions were erroneous.

A technical deficiency in a charging instrument is waived if it is not objected to before the State rests its case. *Castillo v.*

5

*State*, 929 So. 2d 1180, 1181 (Fla. 4th DCA 2006). By contrast, if an information wholly fails to state a crime such that it cannot support a conviction, it is fundamentally defective, and may be raised for the first time on appeal. *State v. Burnette*, 881 So. 2d 693, 694-95 (Fla. 1st DCA 2004) ("An information is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy.").

But even where the body of a charging instrument omits an essential element, such an error is a waivable technical defect, if the charging instrument references the correct statute, and the statute sets forth the required elements. *Id.* at 695. In *Burnette*, the charging instrument failed to allege that a burglarized structure was a "dwelling." *Id.* at 694. Although the body of the information in *Burnette* omitted an essential element, the caption stated the correct offense, and the information alleged that the defendant's actions were "contrary to the provisions of section 810.02(3), Florida Statutes." *Id.* This court held that the information was not fundamentally defective, because it "reference[d] a specific section of the criminal code which sufficiently details all the elements of the offense." *Id.* at 695.

The caption of Appellant's amended information stated that Appellant was charged with vehicular homicide. The body of the amended information alleged that Appellant's conduct was "contrary to Florida Statute 782.071(1)." Appellant could therefore have read the referenced statute and found that the charged offense required proof of viability. *See* § 782.071, Fla. Stat. (2013). Accordingly, like in *Burnette*, the charging instrument in this case did not wholly fail to state a crime and was not fundamentally defective. *See Burnette*, 881 So. 2d at 695. Thus, because Appellant did not object to the information, his argument is waived.

As to the erroneous jury instruction, "[j]ury instructions are 'subject to the contemporaneous objection rule, and absent an objection at trial, can only be raised on appeal if fundamental error occurred.'" *State v. Spencer*, 216 So. 3d 481, 484 (Fla. 2017) (quoting *State v. Weaver*, 957 So. 2d 586, 588 (Fla. 2007)); *see also Foster v. State*, 861 So. 2d 434, 436 (Fla. 1st DCA 2002)

6

(affirming a conviction, despite the jury being instructed on the wrong version of the burglary statute, as defense counsel "stated no objection to the instruction that was given, and did not move for judgment of acquittal on grounds that the verdict might reflect jury findings of fact that did not amount to burglary").

Where an essential element of an offense is never disputed at trial, failure to instruct on that element is not fundamental error. *State v. Delva*, 575 So. 2d 643, 645 (Fla. 1991). In *Delva*, the State was required to prove that the defendant knew a substance was cocaine, but the trial court failed to instruct on this element. *Id.* at 644. The supreme court held that this was not fundamental error, as the theory of defense was that the defendant never knew about the package containing the substance. *Id.* at 645 ("Because knowledge that the substance in the package was cocaine was not at issue as a defense, the failure to instruct the jury on that element of the crime could not be fundamental error and could only be preserved for appeal by a proper objection.").

Appellant never disputed the unborn child's viability at trial. Dr. Nicolaescu testified that Baby Boy Duncan's gestational age was between 26 and 28 weeks, with a fetal weight of 900 grams.[1] The State entered a photograph of the deceased baby, taken during the autopsy, showing an advanced level of development. Defense counsel did not cross-examine Dr. Nicolaescu or object to the evidence presented. Likewise, defense counsel did not argue viability when moving for judgment of acquittal, and made no mention of viability in closing argument.

Appellant's theory of defense was that he did not operate his vehicle in a reckless manner likely to cause death or great bodily injury, and that his actions therefore did not amount to homicide

---

[1] *See Webster v. Reproductive Health Servs.*, 492 U.S. 490, 515, 520 (1989) (finding it reasonable to expect viability at 23 to 24 weeks, and upholding a state abortion statute that created a rebuttable presumption of viability at 20 weeks); *In re T.W.*, 551 So. 2d 1186, 1193-94 (Fla. 1989) ("Under current standards, [viability] generally occurs upon completion of the second trimester.").

regarding *any* of the victims. *See* § 782.071, Fla. Stat. (2013). Lack of the unborn child's viability was not necessary to Appellant's exculpatory theory of defense, and any emphasis in this regard likely would have been a strategic error.

Thus, we hold that the court's failure to instruct on viability did not deprive Appellant of a fair trial and was not fundamental error. *See Delva*, 575 So. 2d at 645. Accordingly, a contemporaneous objection was necessary to preserve the issue for appeal, and no such objection was made.

Furthermore, although Appellant argues that a photograph of a deceased unborn child, by itself, cannot establish viability, other jurisdictions have held that such photographs are admissible to show viability in vehicular-homicide cases. *See State v. Williamson*, 919 S.W.2d 69, 79 (Tenn. Crim. App. 1995). In *Williamson*, the prosecution had to prove viability under Tennessee's vehicular-homicide statute, and a photograph of the stillborn infant was entered into evidence. *Id.* at 78-79. The Tennessee Court of Criminal Appeals held that "testimony *and the photograph* established the viability of the infant." *Id.* (emphasis added). Here, there was more evidence of viability than just a photograph, including testimony about the unborn child's weight and injuries. We therefore hold that the jury instruction here was not fundamentally defective, as a guilty verdict could have been obtained without the assistance of the error.

## II.

Generally, a claim of ineffective assistance of counsel must be raised in a postconviction motion. *Beazley v. State*, 148 So. 3d 552, 554 (Fla. 1st DCA 2014). An ineffective assistance claim may only be raised on direct appeal if: 1) the ineffectiveness is obvious on the face of the appellate record; 2) the prejudice caused by the conduct is indisputable; and 3) a tactical explanation for the conduct is inconceivable. *Id.*; *Latson v. State*, 193 So. 3d 1070, 1071 (Fla. 1st DCA 2016).[2]

---

[2] In *Latson*, Judge Winokur wrote separately to discuss the growing frequency of defendants bringing claims of ineffective

Here, Appellant claims that defense counsel was ineffective for 1) failing to object to the erroneous charging instrument and jury instruction; 2) failing to argue insufficient evidence of viability when moving for judgment of acquittal; 3) failing to object to evidence of alcohol use and comments drawn therefrom; 4) failing to object to questions asking Appellant to comment on the veracity of other witnesses; and 5) failing to timely move for a new trial. Because we find that none of these claims demonstrate indisputable prejudice or an inconceivable tactical explanation, we hold that Appellant is not entitled to relief on direct appeal. *See Beazley*, 148 So. 3d at 554.

As to the defective charging instrument, had defense counsel moved to dismiss the amended information, the State could have amended it again to allege the correct statutory language, and presented the same evidence at trial that led to a conviction. *See State v. Garcia*, 692 So. 2d 984, 985 (Fla. 3d DCA 1997) ("The State may also substantively amend an information during trial, even over the defendant's objection, unless there is a showing of prejudice to the substantive rights of the defendant."). Thus, Appellant fails to establish prejudice.

The unborn-child jury instruction was not fundamentally defective, as discussed above. *See Delva*, 575 So. 2d at 645; *Spencer*, 216 So. 3d at 485. Because evidence of viability was presented at trial, it is not indisputable that defense counsel's failure to object to the jury instruction prejudiced Appellant. *See Beazley*, 148 So. 3d at 554.

As to defense counsel not arguing the issue of viability when moving for judgment of acquittal, this argument assumes that the trial court would have granted an acquittal on that basis. Because the State presented enough evidence of viability for the issue to go to the jury, the trial court could have correctly denied

---

assistance of counsel on the face of the record "as an unjustifiable substitute for claims of fundamental error." 193 So. 3d at 1072 (Winokur, J., concurring). Judge Winokur concluded that the trend of permitting such claims on direct appeal stems from a misreading of case law "and is directly contrary to controlling statutory law." *Id.* at 1074.

the motion; therefore, Appellant fails to show indisputable prejudice. *See Beazley*, 148 So. 3d at 554.

As to Appellant's claim that defense counsel failed to object to evidence about alcohol consumption below the legal limit, and inferences drawn therefrom, such evidence is not inadmissible, as it is probative of recklessness. *Jackson v. State*, 100 So. 2d 839, 842 (Fla. 1st DCA 1958); *see also Rogers v. State*, 957 So. 2d 538, 548 (Fla. 2007) (counsel cannot be ineffective for failing to object to evidence that is not improper).

Likewise, we cannot say that no tactical explanation is conceivable for defense counsel not objecting to questions about the veracity of other witnesses, or that Appellant was indisputably prejudiced by the questions, especially as he never actually commented on the veracity of a witness. *See Johnson v. State*, 969 So. 2d 938, 944 (Fla. 1st DCA 2007) (holding that an improper question was harmless error where the defendant did not respond that the witness was untruthful). On cross-examination, when Appellant was asked if a witness was giving unreliable testimony, Appellant answered, "That's not what I'm saying." When Appellant was asked whether a witness was wrong in his testimony that Appellant was passing vehicles while going uphill in a no passing zone, Appellant responded that "they also said things that were inaccurate," but never claimed the witness was lying. When Appellant was asked if a witness was telling the truth in his testimony that Appellant attempted to pass a line of cars in a no passing zone, Appellant responded, "I never attempted to pass any vehicles in a non-passing zone."

Finally, as to counsel's failure to timely file a motion for new trial, we have held that, absent clear evidence that such a motion would have been granted, the remedy is a postconviction motion, not direct appeal. *Crenshaw v. State*, 490 So. 2d 1054, 1055 (Fla. 1st DCA 1986). Thus, based on the relevant evidence admitted at trial, we find nothing in the record to show that the trial court would have granted the motion for a new trial, as the verdict was not contrary to the weight of the evidence.

AFFIRMED.

WINSOR, J., concurs; MAKAR, J., concurs in result with opinion.

10

MAKAR, J., concurring in result with opinion.

On December 6, 2013, David Lee Huckaba's reckless driving resulted in a horrendous multi-vehicle accident that killed four people (one an infant in utero) as well as injuring several others. One of the fourteen charges in the initial information accused Huckaba of vehicular homicide of the unborn infant under the applicable 2013 version of section 782.071, Florida Statutes, which required proof that Huckaba's recklessness resulted in the killing of "a viable fetus."

Almost two years later, an amended charging document—narrowed to four counts and eliminating all DUI counts—modified the vehicular homicide charge against Huckaba by replacing "a viable fetus" with "an unborn child," which was language from an intervening amendment to section 782.01 that became effective October 1, 2014:

> "Vehicular homicide" is the killing of a human being, or the killing of ~~a viable fetus~~ <u>an unborn child</u> by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.

Ch. 2014-194, Laws of Florida, § 5. Neither Huckaba's new lawyer, nor the prosecutor, nor the trial judge recognized the error, resulting in jury instructions, a trial, and a conviction based upon the incorrect statutory language (i.e., "an unborn child" versus "a viable fetus").

Because his trial lawyer failed to object to the incorrect language in the charging document and the jury instructions, Huckaba's appellate claim is that fundamental error resulted due to the jury convicting him of killing "an unborn child" when the State's obligation was to allege and prove the deceased was "a viable fetus," the latter being more scientifically and medically difficult to prove. The question is not whether the correct statute

11

number was cited (it was in both the initial and amended information), whether the jury instructions were correct (they weren't), or whether Huckaba's counsel disputed the viability of the unborn child (he didn't because it was not an issue to be proven at trial). Rather, the inquiry is whether fundamental error exists due to the error in the information and jury instructions that the prosecutor, Huckaba's trial lawyer, and even the trial judge missed.

A fundamental error is one that "must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960); *see also Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988) (the doctrine of fundamental error applies "where the interests of justice present a compelling demand for its application.").

The error at issue—interlineating "unborn child" in place of "viable fetus"—does not meet the fundamental error test. First of all, our supreme court has held that when a standard jury instruction is used—and later determined to be inadequate—the flaw need not always be so serious as to amount to fundamental error. *Smith v. State*, 521 So. 2d 106, 108 (Fla. 1988). The inadequate insanity instruction used in *Smith* was deemed not "so flawed as to deprive defendants claiming the defense of insanity of a fair trial." *Id.* As in *Smith*, a degree of judicial judgment is exercised in drawing the line between a fair and unfair trial.

In this case, the 2013 version of the vehicular homicide statute, and its corresponding standard jury instruction, said that "a fetus is viable when it becomes capable of meaningful life outside the womb through standard medical measures." § 782.071(2), Fla. Stat. (2013); *see In re Standard Jury Instructions In Criminal Cases—No. 2006-1*, 946 So. 2d 1061, 1068 (Fla. 2006) (adopting standard criminal instruction 7.9, related to vehicular and vessel homicide), *modified by In re Standard Jury Instructions in Criminal Cases-Report No. 2014-08*, 176 So. 3d 938, 941 (Fla. 2015) (amending 7.9 to say that "An 'unborn child' means a member of the species homo sapiens, at any stage of development, who is carried in the womb.").

On the facts presented, it cannot be concluded that a guilty verdict could not have been obtained without the error in the information and jury instructions. It was proven that the unborn child had a gestational age of between 26 and 28 weeks and a fetal weight of 900 grams, placing him at or within the general parameters of fetal viability set forth in judicial decisions. *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 860 (1992) (noting that viability was approximately 28 weeks at the time of *Roe v. Wade*, 410 U.S. 113, 160 (1973), that it can occur in some situations at 23-24 weeks, and that it may occur "at some moment even slightly earlier in pregnancy, as it may if fetal respiratory capacity can somehow be enhanced in the future."); *In re T.W.*, 551 So. 2d 1186, 1190 (Fla. 1989) (stating that "viability of the fetus" occurs "approximately at the end of the second trimester."); *see also* Moore et al.*, The Developing Human: Clinically Oriented Embryology,* 93 (10th ed. 2016) ("Viability is defined as the ability of fetuses to survive in the extrauterine environment . . . Most fetuses weighing between 750 and 1500 g usually survive, but complications may occur; they are referred to as preterm infants.") [hereinafter *The Developing Human*].

Had the unborn child's gestational age and fetal weight been further from these general parameters, a more compelling case for fundamental error would exist. For example, if gestational age were in the range of 20-21 weeks and fetal weight was 500 grams or less, the likelihood of viability would be exceedingly small for such a child. *Jon E. Tyson et al., Intensive Care for Extreme Prematurity—Moving Beyond Gestational Age*, 358 NEW ENG. J. MED. 1672 (2008) (stating that infants born between 22-25 weeks require extreme intensive care to promote chance of survival); *see also The Developing Human* at 92-93. Under those circumstances, a conviction for killing a "viable fetus"—as required by the 2013 statutory language of the vehicular homicide statute—would likely be fundamental error because a violation of the statute couldn't have been proven absent the error; likewise if the unborn child was in the first trimester of development.

Admittedly, the 2013 version of the statute appears to have required proof of the viability of the *specific* unborn child versus proof of when viability *generally* occurs among the unborn of

similar gestational age and weight. For example, certain fetal conditions correlate with a higher medically-significant mortality rate, such as genetic conditions, heart or lung defects, infections, low placental circulation, or substance abuse by the mother. *The Developing Human* at 99. But no Florida court has held that generalized proof as to viability—as reflected in judicial decisions discussing gestational age and fetal weight—is inadequate under the circumstances presented. And Huckaba does not say how a retrial would be meaningfully different if the State had to prove the viability of the deceased unborn child versus the viability of a cohort of unborn children of identical gestational age and weight; he posits no individualized evidence that the unborn child would have been unable to survive outside of his mother's womb.

For these reasons, I agree that affirmance is warranted.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Andy Thomas, Public Defender, Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Benjamin L. Hoffman and Virginia Chester Harris, Assistant Attorneys General, Tallahassee, for Appellee.